LOREN M. PERRIN, et al., Plaintiffs, v. H. M. CHIDESTER, et al.,
Defendants.  A. N. STOUT, Intervenor, Appellant.

Partition: REFEREE'S SALE: MUTUAL RESCISSION: DAMAGES.  Upon a
mutual rescission and abandonment of a referee's sale of land the
purchaser would be entitled to a return of any part of the con-
sideration paid; but if without excuse he refused to complete the
purchase, the referees would have the right to retain the amount
paid as damages, or sue for damages or for specific performance;
and if they elected to sue for damages the measure would be the
difference between the amount bid and the amount obtained at a
resale.

Same: TITLE: TIME FOR PERFECTING.  Ordinarily if the vendor cannot
make such title as he has agreed to convey the vendee is relieved
from paying for the land and may recover any portion already paid;
but if the vendor is ready and willing to perform he cannot recover
that portion of the price paid; and the fact of resale does not
change the rule.  And ordinarily where the vendor has received the
full purchase price, and no time is specified, he is entitled to a rea-
sonable time in which to convey; but demand and refusal is a con-
dition precedent to a suit for return of the purchase price.

Same: MUTUAL ABANDONMENT OF SALE: EVIDENCE.  On the issue in
this action as to the right of the purchaser at partition sale to
recover the amount paid as earnest money, which had been retained
by the referees, the evidence is held insufficient to show a mutual
abandonment of the sale which would entitle him to its return.

Same: CAVEAT EMPTOR: RESCISSION.  The rule of *caveat emptor* ap-
plies, at least to a limited extent, to partition sales; but the pur-
chaser has the right to demand such regularity in the proceedings
as will convey such title as the parties have, and if so defective
that he will not get the title of all the parties he will not be re-
quired to complete the sale, although irregularities not available
to the parties on collateral attack will not authorize rescission.  .

Same: RESCISSION: TENDER.  Where a purchaser at partition sale
placed his objections to the title on certain grounds, and the title
was perfected by the referees in compliance therewith, he could not
thereafter rescind the sale on other and different grounds.  And

after perfection of the title he could not rescind because of the alleged failure to tender a deed, without tendering the balance of the purchase money and demanding compliance with the contract.

**Same:** A purchaser at partition sale cannot base his refusal to complete the contract and demand return of the earnest money paid on the ground that the referees improperly treated the sale as subject to certain leasehold rights, where any defect in that regard in the original proceedings was cured by a supplemental decree and tender of a new deed before any objection to the title was made.

*Appeal from Monroe District Court.*—HON. FRANK W. EICHELBERGER, Judge.

FRIDAY, FEBRUARY 14, 1913.

ORIGINALLY this was a partition suit to determine the interests of the various owners of something like five hundred and twenty-eight acres of land; to allot the same by parcels, or to sell the whole in the event it could not be divided. After a hearing, the court found the land could not be equitably divided, and ordered a sale thereof, fixed the interest of the various parties, and appointed referees and ordered a sale. Pursuant to order, the referees fixed a time for the sale of the land, of which due notice was given. All but about one hundred and twenty acres of the tract were sold by the referees to various purchasers, the consideration paid, and deeds executed. This one hundred and twenty acres was put up at auction on March 8, 1911, and A. N. Stout was one of the bidders thereat. His final bid being $3,600, and that being the highest and last, the land was struck off to him, and he paid $500 of the purchase price to bind the bargain. At that time he had never seen the land; but on the 17th of the same month he went and looked it over. In the meantime the referees had furnished an abstract of title, which Stout had turned over to his attorneys, but from whom he had received no opinion at the time he went out to see the land. Something like six weeks after the sale, his attorney made a report upon

the abstract, pointing out various defects in the title, as shown thereon. After getting this, Stout went to the referees and told them that he would not take the land or complete the purchase, and he demanded the return of the money paid. The principal ground of his objection at that time was that the referees had not furnished him an abstract by April 1, 1911. The referees refused to return the money, and indicated that they proposed to hold him on his contract. They then proceeded to cure, or try to cure, the defects in the title, which Stout's attorneys had pointed out, and on May 29th, and again on September 12, 1911, procured supplemental decrees in the original partition suit, which they claim cured all the defects in the title, as pointed out by the attorneys. After this was done, the supplemental decrees were extended upon the abstract; and, as amended, the abstract was submitted by them to the attorney originally employed by Stout, and he O. K.'d the title. Thereafter the parties to the partition suit procured another amendment to the original decree extinguishing the rights of all parties to any coal rights in the land, after the expiration of a certain coal lease. This supplemental decree was entered December 4, 1911. In the meantime, and on October 24th, Stout served upon the referees a written renunciation of his contract of purchase. After obtaining the December modification of the decree, the referees filed an application in court to set aside the sale to Stout on the ground that he had refused to comply with his contract of purchase, and that he had forfeited all his right to the land and to the $500 paid, and they asked an order of court setting aside the sale, and for authority to resell the land. The request was granted; and on December 28, 1911, the referees sold the one hundred and twenty acres for $1,080 less than Stout's bid. The order of resale was as follows:

And the court, having fully considered the matter, and being now fully advised in the premises, finds that said A. N. Stout, the purchaser at said sale, has failed and neglected to pay any of said purchase price, except the said sum of

$500, and still refuses to pay the amount due and to accept the deed for said land, and that it will be necessary to again advertise and sell said above-described real. estate. It is therefore ordered, adjudged, and decreed by the court that said sale to said A. N. Stout be, and the same is hereby, set aside and held for naught, and the referees are hereby directed and authorized to sell said real estate above described, subject to a certain coal lease covering the coal under said land in favor of Smoky Hollow Coal Company, at public auction, after giving such notice of said sale as is required by law.

After the resale, Stout came into the case with an application asking an order on the referees to return him the $500. This was objected to by all the parties to the suit and by the referees, and Stout's right to a return of the money was strenuously resisted on the ground that he had repudiated the sale; had failed to comply with his part of the contract without just cause, and that the referees were entitled to hold the money paid as an offset to the damages suffered, because the resale was $1,080 less than Stout's original bid. Upon these issues, the case was tried to the court, resulting in a denial of Stout's application for a refund, and he (Stout) appeals.—*Affirmed.*

*John T. Clarkson,* for appellant.

*Mabry & Hickenlooper,* for appellees.

DEEMER, J.—The general nature of this controversy is outlined in the preceding statement, and the grounds relied upon for a reversal may be briefly summarized as follows: (a) The title offered Stout was not such as he bargained for. (b) The deed tendered by the referees did not comply with the terms of the sale; and, having elected to rescind, there was a mutual rescission, and Stout was entitled to the return of his money. (c) The contract did not provide for a forfeiture; and, the referees having elected to rescind and resell, Stout was entitled to the return of his money. (d) Stout was

not tendered a deed until October 24th, giving the referees
ample time to perfect the title and give him a mercantile title;
but this they failed to do in that:    (1) The deed did not
comply with the terms of the sale in that it reserved all the coal
and mineral underlying the land, whereas the sale of the prem-
ises was subject only to a coal lease then outstanding; (2)
the proceedings were defective in that, in the paper served
and filed, it was stated that coal and mineral rights would be
retained by the owners, and, at the time the deed was ten-
dered, the referees could not transfer any coal or mineral
rights; (3) the supplemental decrees were made after the sale
to Stout, and the referees were not in position, in October, to
deliver to Stout a merchantable title to the land.

I.   We may first dispose of a general contention made for
Stout that there was a mutual rescission and abandonment of
the contract of purchase. · If that be true, then Stout would
unquestionably be entitled to a return of the
money paid by him.    *Anderson v. Haskell,*
45 Iowa, 45; *Burge v. Railroad Co.,* 32 Iowa,
101; *Frederick v. Davis,* 133 Iowa, 362; *Myers
v. Townsend,* 103 Iowa, 569; *Irish v. Martin,* (Iowa) 113 N. W.
470; *Wood v. Whitton,* 66 Iowa, 295; *Tague v. McColm,* 145
Iowa, 179; *Reiger v. Turley,* 151 Iowa, 491. On the other hand,
if the referees were not at fault, and Stout, the bidder, without
justifiable excuse, refused to complete the contract by pay-
ing the balance of the purchase money and taking title to the
land—that is, such title as the referees were authorized to
convey—then Stout was not entitled to a return of the money
paid, but the referees had an election to sue him for the balance
due by action for specific performance, or to secure an order
for the resale of the land, retaining the amount paid to reim-
burse them for any damages which might follow, because of
Stout's failure to comply with his contract; these damages, of
course, being the difference between the amount of his bid and
the amount obtained at the resale.    *Downey v. Riggs,* 102
Iowa, 88; *Claude v. Richardson,* 127 Iowa, 623; *Thompson v.*

1. PARTITION:
referees sale:
mutual rescis-
sion: dam-
ages.

*Brown,* 106 Iowa, 367; *Austin Mfg. Co. v. Decker,* 109 Iowa, 277; *Olson v. Sortedahl,* 143 Iowa, 166; *Simmons v. Sefrit,* (Iowa) 125 N. W. 93. This is but a familiar application of the rule that a party cannot profit by his own wrong.

In actions between vendor and purchaser, if the purchaser, without just cause, refuses to complete his contract, he cannot, in the absence of some promise or agreement, demand the return of the consideration paid. Warvelle on Vendors, page 949; *Lawrence v. Miller,* 86 N. Y. 131; *Bakeman v. Pooler,* 15 Wend. (N. Y.) 637.

Ordinarily, if it is found the vendor cannot make a good or merchantable title, the vendee is relieved from paying for the land, and may receive back what he has paid. *Sennett v. Shehan,* 27 Minn. 328 (7 N. W. 266). But,

2. SAME: title: time for perfecting.

if the vendor is willing and offers to perform his part, no action will lie to recover the portion of the purchase price paid, and the fact of a resale does not change the rule. *Ketchum v. Evertson,* 13 Johns (N. Y.) 359 (7 Am. Dec. 384).

Again, even in ordinary sales where a vendor has received the purchase money for land which he has agreed to convey, if no time be specified, he is entitled to a reasonable time within which to make a conveyance, and in such case there should be a demand of a deed and a refusal, before a suit for the return of the purchase money will lie. *Kime v. Kime,* 41 Ill. 397. How far these rules are applicable to judicial or referees' sales will be hereafter considered.

Whether or not there was an abandonment or mutual rescission of the contract between the parties is wholly a question of fact; and a reading of the record fully convinces us that there was no such abandonment or

3. SAME: mutual abandonment of sale: evidence.

mutual rescission. It is true that, from near the time Stout saw the land down until the commencement of this proceeding, he, Stout was endeavoring to find some cause for rescission; but the referees never consented thereto; on the contrary, they were insisting that he

perform; and it also appears that they were attempting to meet all objections which Stout had interposed to the title or to the proceedings.

Moreover, in the proceedings asking for a resale, the referees in their application recited the following facts:

Come now the referees in the above-entitled partition proceeding and state to the court that heretofore, to wit, March 8, 1911, they sold at public sale, under the orders and directions of the court, the following described real estate, to wit: [Here follows description.] That said land was sold on said date to one A. N. Stout, who was the highest bidder therefor, bidding for the sum of $3,600, $500 cash down, and the balance to be paid upon delivery of deed and abstract; that said sale was duly approved by the court on the 13th day of September, 1911. They further state that they have presented to said A. N. Stout a referees' deed therefor, together with an abstract of title for said land, but that said A. N. Stout refused to comply with his part of the contract to purchase, and refused to pay the amount due from him, and still neglects and refuses to pay therefor, and that he has now forfeited all his rights to said land and to the $500, which he paid at time of sale. Wherefore, said referees ask the court to set aside said order approving sale to said A. N. Stout of said land, and which order was made on September 13, 1911, and that the deed to him be set aside, and that said sale be set aside and held for naught, and that they be directed to readvertise the said land to be sold at public sale in the manner required by law, and sell the same at public sale after giving due and legal notice thereof.

It was pursuant to this application that the order for resale was made; and it will be noticed that in this they claimed the right to retain the $500 because of Stout's default. There being, then, no rescission or abandonment, we go now to the other grounds relied upon for a reversal. These are, in substance, that the proceedings were defective, that the title tendered was not merchantable, and that, by reason of these facts, Stout is entitled to recover back the purchase money paid.

A partition sale is a judicial sale, and the rule of *caveat*

*emptor* applies at least to a limited extent. *Findley v. Richardson,* 46 Iowa, 103; *Hale v. Marquette,* 69 Iowa, 376.

4. SAME: *caveat emptor:* rescission.

In sales upon partition, the rule is applicable, in so far as any warranties are concerned; but a purchaser has a right to demand that the proceedings be such as that he gets the title of the parties to the proceedings. If, then, he shows that the proceedings were so defective that he could not obtain the title of the various parties, no matter what that title may have been, he is not, according to the weight of authority, required to complete the sale. *Cashion v. Faina,* 47 Mo. 133; *Sebring v. Mersereau,* 9 Cow. (N. Y.) 344.

The rule announced in Freeman on Cotenancy and Partition is as follows: ''If errors and irregularities occur in the course of the proceedings, but are not of a character such as to render the sale in partition void, in whole or in part, they have no prejudicial effect on the purchaser. If the parties against whose interests the errors and irregularities were committed take no steps to set aside or otherwise avoid the sale, the purchaser, by reason of their acquiescence, can acquire their title, and must therefore make good his bid.'' The writer cites the following in support of the text: *Rogers v. McLean,* 34 N. Y. 536; *Mead v. Mitchell,* 17 N. Y. 211 (72 Am. Dec. 455); *Croghan v. Livingston,* 17 N. Y. 218; *Dunning v. Dunning,* 37 Ill. 315. We have examined them and find that they do so. Again the same text-writer says: ''A sale in partition is a judicial sale. The purchase is protected by the judgments of the court as fully as in any execution or judicial sale. The various matters necessary to authorize the sale have all been made the subjects of judicial inquiry and determination. If the court' acted erroneously in deciding upon the sale, or committed any other error, this should have been corrected by appeal or by some other appropriate proceeding in the partition suit. Not being so corrected, the parties interested have acquiesced in and ratified it, and they

cannot employ it in any collateral manner to defeat the purchaser's title.''

Now the evidence shows that, when the referees took the abstract to Stout, he (Stout) delivered the same to his attorney for examination, and that this attorney pointed out certain

5. SAME: rescission: tender.

defects which should be cured. Stout then said to one of the referees that he did not think the defects could be cured, but this referee said that they could and would be, and the matter was immediately placed in the hands of the attorneys in the original suit, and supplemental decrees on proper notice were procured, which were intended to meet all these defects. These were extended upon the abstract, and the abstract was again handed to Stout's attorney, and he (the attorney) put his ''O. K.'' upon it. True, Stout says he had no authority to do so, but he does not distinctly negative his continued employment. Having met all these objections, one of the referees tendered Stout a referees' deed and demanded that Stout pay the balance within five days, or he would forfeit the $500. Stout then made no other objection to the title, but within two or three days served notice upon the referees to the effect that:

Complying with the verbal notice heretofore given you during the month of April, 1911, I demand of you, and each of you, the return of the money deposited, being the sum of five hundred ($500.00) dollars, which money was deposited as earnest money, wherein I had arranged to purchase certain property from you in certain partition proceedings in the above-entitled cause, and wherein you agreed to sell said property, but by reason of the imperfect and defective title you were unable to comply with the terms of your agreement, whereby you were to convey said premises during the month of March, 1911, and that by reason of your inability at that time to furnish me a good title, I advised you in the month of April, 1911, that I would not take said property and would require you to return the money delivered, to wit, five hundred ($500.00) dollars. You are now notified that I demand of you, and each of you, the return of said money, to wit, the

sum of ($500.00) five hundred dollars. Dated this October 24th, 1911.  A. N. Stout.

It will be noticed that Stout placed his notice of rescission upon what had been done in April, and that he made no other complaints of the title than those which appeared at that time. The referees had a reasonable time within which to cure the defects appearing upon the abstract which were pointed out to them, and this was done. As a rule, where a party gives a reason for his conduct, and plants his objections upon certain grounds, he cannot, after the other party has gone to expense and cleared up all these defects, make his objections upon other and distinct grounds. In other words, he cannot, after litigation is commenced, "mend his hold." *Donley v. Porter*, 119 Iowa, 542, and cases cited.

The defects thus pointed out were cured within a reasonable time, and Stout then made no other objections than the ones first insisted upon. It is said, however, that the referees did not tender a deed and demand the money after the defects were cured. But this is a mistake, as the record will show. But, however this may be, Stout, in order to recover, would, under the facts disclosed, as it seems to us, be compelled to tender his money and demand a compliance with the contract. *Rutherford v. Haven*, 11 Iowa, 587; *Washburn v. Carmichael*, 32 Iowa, 475; *Grimmell v. Warner*, 21 Iowa, 12; *Winton v. Sherman*, 20 Iowa, 295; *Hayward v. Munger*, 14 Iowa, 516.

Appellant's counsel rely quite largely upon the fact that, in reporting the sale to Stout, the referees expressly said that: "All coal and mineral underlying the same, which is expressly reserved, and all of which above-described property is subject to a certain coal lease covering said property and in favor of the Smoky Hollow Coal Company"—and that the deed contained a like reservation, and that in other parts of the proceedings this was the statement. But our examination shows that the original decree provides for a sale, subject to the Smoky

6. SAME.

Hollow Coal lease, that the referees were authorized to make such a sale, and did in fact do so, when the property was offered at auction. Again, whatever trouble there may have been with the original decree and proceedings in this regard was cured by a supplemental decree entered October 22, 1909, and another decree entered December 4, 1911. No objection upon this score was ever entered by Stout until he filed his application thereon on December 13, 1911. The deed which was offered him in October was in perfect form, and the original decree was corrected, and the mistake in some of the intermediate proceedings was corrected before Stout even made any objections thereto. On the whole record, we are impressed with the thought that Stout "got sick" of his bargain, and from the time he first saw the land concluded to rue it; and that without substantial grounds for complaint, save that he offered too much for the land, he is attempting to get rid of a binding bargain; and without fault on the part of the referees, and solely because he did not wish to complete the sale, he asks the court to return him the money paid. This we think he should not be permitted to do; and, with the trial court, we agree that his application should be overruled.— *Affirmed.*