F. E. WATERS, Appellant, v. C. W. and H. B. PEARSON, Appellees.

**Real property:** CONTRACTS OF SALE: BREACH: FORFEITURE. Under a contract for the sale of land containing no forfeiture provision, and neither providing for liquidated damages nor making time of the essence of the contract, a vendor electing to terminate the contract because of the purchaser's default is not entitled to a forfeiture of the advance payments.

**Same:** VENDOR AND VENDEE: RIGHTS AND REMEDIES. Where a purchaser of land fails to perform his contract of purchase the vendor may elect to pursue either of three remedies, he may keep his tender of performance good, demand the balance of the purchase price and sue for specific performance, or he may terminate the contract, keep his land and sue for damages, or he may rescind the contract *in toto*. If he elects to pursue the first remedy he is entitled to retain all payments made; if he elects to keep the land and sue for the breach he can recover such damages as he has sustained, and if his damage exceeds the amount of advance payments he can apply such payments on the damage. If his damage is less than the advance payments the purchaser is entitled to the balance. If he elects to rescind the contract *in toto* the parties are thus restored to their former situation and the purchaser may recover back the advance payment.

**Same:** BREACH OF CONTRACT: DAMAGES: APPLICATION OF ADVANCE PAYMENTS. Under the statutes relating to the forfeiture of a contract for the purchase of land, the vendor in a contract containing no provision for forfeiture, when electing to sue for damages for the vendee's breach, may apply the advance payments to the satisfaction of his damages.

**Same:** CONTRACT OF SALE: PERFORMANCE. Where a contract for the sale of land contains no provision that time is of the essence of the agreement, the duty of performance is ordinarily mutual, and if both parties fail to perform upon the day fixed the contract is still binding upon both; but either party being ready may terminate the delay and put the other in default by a tender of performance on his part.

**Same:** TENDER OF PERFORMANCE. Under a contract for the sale of land to be conveyed clear from incumbrance on a certain date, the tender of a warranty deed by the vendor, accompanied by an unrecorded deed from his grantor and an abstract certified only to a prior date, and showing. the title in the former owner, subject to an unrecorded mortgage back to such former owner, was not such a tender of performance as entitled him to recover the contract price.

**Same:** TENDER OF TITLE: OBJECTION: WAIVER. The statute providing that the person to whom a tender is made must at the time make any objection he may have to the money, instrument or property tendered, has no application to the tender of an abstract of title; but a purchaser has a reasonable time in which to examine the same and make his objections, and this right is not waived by a request or direction that it be delivered to his attorney for that purpose.

**Same:** BREACH OF CONTRACT: ACTION FOR PRICE. Where a contract for the sale of land continued as binding upon both parties until a time when the vendor leased the premises to another, thus putting it out of his power to perform, the refusal of a tender by the purchaser prior to that time was not a breach of the contract authorizing the vendor to sue for the contract price.

*Appeal from Cedar District Court.*—HON. W. N. TREICHLER, Judge.


TUESDAY, JANUARY 13, 1914.


ACTION at law by a vendee to recover back money paid as advance payment upon a contract of purchase of real estate which was not performed by the vendor. There was a trial to a jury, and a verdict and judgment for the defendants. The plaintiff appeals. *Reversed* and *Remanded.*

*Robert Brooke* and *Ranck & Messer,* for appellant.

*Henry Negus* and *J. E. McIntosh,* for appellees.

EVANS, J.—On July 8, 1910, the parties to this suit entered into the following written contract:

This agreement made and entered into this 8th day of July, A. D., 1910, by and between C. W. Pearson and wife, Nellie B. Pearson, his wife, and H. B. Pearson, single, of Cedar County, Iowa, and F. E. Waters of Cedar County, Iowa, witnesseth: That the said C. W. Pearson and wife, Nellie B. Pearson, and H. B. Pearson hereby agree to sell and convey to the said F. E. Waters, on the performance of the agreements of the said F. E. Waters, as hereinafter mentioned, in fee simple, clear of all liens and incumbrances, by a good and sufficient warranty deed, the real estate situated in the county of Cedar and state of Iowa, to wit: That part of the farm now known as the 'Irvin Compton farm,' and owned at the present time by C. W. and H. B. Pearson, laying south of the wagon road running east and west, and south of the house, containing fifty acres, more or less; also that part of the farm laying north of the wagon road running east and west, and containing one hundred and sixty acres, more or less, and the said land is a part of the land now occupied by Irvin Compton at this date. For the purchase price of one hundred and seventy-seven dollars ($177.00) per acre, payable as hereinafter mentioned. One thousand dollars ($1,000.00) cash, which has this day been paid by the said F. E. Waters to C. W. and H. B. Pearson, the receipt of which is hereby acknowledged, one thousand dollars ($1,000.00) December 1, 1910, and the balance of the purchase price March 1, 1911. The one thousand dollars as cash payment, also the one thousand dollars payable December 1, 1910, are to draw 4% from date of payment until March 1, 1911. The said C. W. and H. B. Pearson agree to furnish an abstract of title showing the said premises to be free from all incumbrances excepting mortgage to the amount of eight thousand dollars ($8,000.00) thereof at the time of the delivery of the deed, said mortgage may be paid March 1, 1911, which deed shall be delivered March 1, 1911, at which time possession shall be given.

The plaintiff, as purchaser, made the cash payment of $1,000 at the time of the execution of the contract, and made the additional payment of $1,000 on December 1, 1910, as provided by the contract. The contract was not otherwise performed. One of the controlling questions in the case is, Which party was in default when performance failed? Again, if the plaintiff was in default, did he thereby necessarily forfeit all right to recover back any part of the advance payments made? The action was brought by the plaintiff to recover back the sum of $2,000 thus paid by him upon the contract. The defenses interposed are in substance: (1) That the plaintiff forfeited such advance payments by his default; and (2) that the defendants' damages for plaintiff's breach of contract were greater than the sum of $2,000, and recovery of damages is asked in the form of a counterclaim. The case is necessarily submitted here on errors, and forty-seven of these are assigned in argument. We shall have no occasion to deal with the case in such detail. The evidence is not in substantial conflict upon material points. The following facts appear therefrom without dispute:

At the time the contract in question was entered into, the defendants were the equitable owners of the land under a contract of purchase from one Compton, which was to be performed also on March 1, 1911. Compton and the parties to this contract were all residents in the vicinity of West Liberty; the plaintiff living a few miles therefrom. On the morning of March 1st the defendants called the plaintiff by phone to appoint a meeting with him at West Liberty for that day for the purpose of closing up the contract with him. The plaintiff replied that he would not be able to be there. The defendants met Compton at West Liberty, and mutual and satisfactory performance was made of the Compton contract, though not in strict accord with its terms. The defendants had intended to pay Compton in full out of the purchase money to be received by them from the plaintiff; the amount of the price under each contract being about $38,000. The

plaintiff having failed to appear, the defendants paid to Compton $13,000 of the purchase price, and executed a mortgage back upon the property for $25,000 balance due, and received from Compton a warranty deed for the property. Neither the deed nor mortgage was filed for record on that day. Such being the condition of the defendants' title on the evening of March 1st, they executed a warranty deed in due form to the plaintiff as grantee, and took the same to the plaintiff's home at about 8 p. m., and tendered the same to him, and exhibited, also, to him the deed executed by Compton to themselves. They also offered him an abstract of title certified only to December, 1910, which showed the title of the property to be in Compton, and showed, also, two existing mortgages of $5,000 and $6,000 respectively. The papers thus tendered were not examined by the plaintiff; but in lieu of examination he asked or directed that they be submitted to his attorney, Robert Brooke, at West Liberty. The defendants gave no indication whether they would or would not submit such papers to the attorney. The plaintiff was not advised of the existence of the $25,000 mortgage; the intention of the defendants being to pay off such mortgage if the plaintiff performed, and to do so before the mortgage should be placed of record. They had an arrangement with Compton whereby the $25,000 mortgage might be temporarily withheld from record, in order that it might be paid out of the proceeds of the contract with plaintiff. But this arrangement provided that the Compton deed must also be withheld from record for the same period. In other words, the Compton deed was only conditionally delivered, and was not to be filed for record until the $25,000 mortgage was either paid or filed for record. On March 2d the defendants, deeming their tender good, and the plaintiff in default, caused the Compton deed and the $25,000 mortgage to be filed for record. Five days later they entered into a lease of the premises for the ensuing year. From such latter date, therefore, it was not in the power of the defendants to perform the contract.

The plaintiff does not appear to have tendered performance at any time. It is urged in pleading and argument by defendants that he was not intending to perform, and that he had made no preparation therefor, and was wholly unable to carry out the contract on his part. The evidence in the record before us, however, is silent on this question.

Upon the record before us, we turn our attention to the two questions already stated, taking up the second question first.

I. If performance failed through the default of plaintiff, did the plaintiff thereby necessarily forfeit *in toto* the advance payments made by him?

The trial court instructed the jury as follows:

Instruction No. 10. You are instructed that, if you find for the plaintiff, the amount of his recovery will be $2,035, with 6 per cent. interest thereon from March 1, 1911. If you find for the defendants, the amount of their recovery will be the difference between the contract price plaintiff agreed to pay for the land and its fair market value on March 1, 1911, as you find from the evidence. If you find the difference between the contract price and the market value exceeds $2,000, then your verdict should be for such amount as you find the same exceeds the $2,000, paid by plaintiff. If you find that defendants' damages do not exceed the $2,000, or that defendants have suffered no damages, then your verdict should be for the defendants, without any amount stated.

The effect of the foregoing instruction was to hold that, if the plaintiff was in default, he forfeited the advance payment of $2,000, and, further, that, if the damages of the defendants by reason of the breach exceeded the sum of $2,000, the defendants were entitled to recover such excess.

1. REAL PROPERTY: contracts of sale: breach: forfeiture.

Under this instruction the defendants were entitled to a verdict, even though their damages were less than $2,000, and even though they had sustained no damages whatever. This amounted to declaring a forfeiture regardless of the amount

of damage. The verdict was for the defendants, without awarding any additional amount. This instruction was clearly erroneous. The contract of the parties provided for no forfeiture. Neither was time of the very essence of the contract, although the circumstances surrounding the parties did warrant the inference that prompt performance was contemplated. Neither was there any provision for liquidated damages. It is urged by appellees that the plaintiff cannot base a cause of action upon his own breach of contract, that he would thereby profit by his own wrong, and that he would thereby work a compulsory rescission of a contract which he had himself rued. Reliance is placed upon some of our previous cases which will be referred to later. This was the view adopted by the trial court in the instruction above quoted.

If the contract in question had contained a forfeiture provision, the defendants doubtless could have declared a forfeiture thereunder. But under our statute such forfeiture could not become effective until after written notice and the expiration of thirty days thereafter. This is a merciful provision of our statute extending a little grace to a party in default who may be staggering under the load of his undertaking.

Code, Section 4299: Any contract hereafter made for the sale of real estate in the state of Iowa, and which provides for the forfeiture of vendee's rights therein upon the happening of certain conditions, shall not be forfeited or canceled unless, thirty days before a declaration of forfeiture is made, a written notice be served on the vendee or assignee, notice of whose rights as assignee has been conveyed to vendor, and on the party in possession of said real estate, which notice shall be served in same manner and by same parties authorized to serve original notices, and shall contain a declaration of an intention to forfeit said contract, and the reason therefor.

Sec. 4300. Performance. For the period of thirty days after service of said notice the vendee, or those claiming under him, may discharge any unpaid payment and costs of service of notice of forfeiture, or perform any condition

broken; and, if said payments are made or conditions broken are performed within said period of thirty days, the right to forfeit for defaults occurring before said notice is served is terminated.

These sections in terms refer to contracts which contain forfeiture provisions. If we assume that they do not apply to such a contract as is involved in the case at bar, wherefrom all forfeiture provisions are omitted, yet the argument is naturally suggested that under the contention of the appellees and the instruction of the trial court a contract without forfeiture provisions can be made to operate more severely than if it contained such forfeiture provisions. There are many reasons why such a right of forfeiture or penalty upon this form of contract ought not to be sustained. It is sufficient, however, to call attention to Code, sec. 4301, which in express terms makes the inhibitions of forfeiture without written notice, contained in the preceding sections, applicable to all contracts of sale of real estate. Such section is as follows:

Sec. 4301. Terms of Contract. The requirements contained in sections forty-two hundred and ninety-nine and forty-three hundred shall be operative in all cases where the intention of the parties as gathered from the contract and surrounding circumstances, is to sell or to agree to sell an interest in real estate, any contract or agreement of the parties to the contrary notwithstanding.

We hold, therefore, that, even though the plaintiff was the defaulting party, the defendants, if they elected to keep the land and to terminate the contract because of plaintiff's default, were not entitled to withhold the $2,000 advance payments on the mere ground of forfeiture or penalty. This holding, however, does not preclude a vendor in such a case from withholding advance payments in whole or in part on other appropriate grounds, and this phase of the question must also be considered.

If a vendee fails to perform his contract of purchase of real estate, various appropriate remedies are open to the vendor, and he may elect which he will pursue. (1) He may keep his tender of performance good, and may demand the balance of the purchase price, and he may sue for specific performance. (2) He may terminate the contract because of the breach of the vendee, and he may keep his land, and sue for damages for the breach. (3) He may rescind the contract *in toto* *Pritchard v. Mulhall,* 127 Iowa, 545; *Pedley v. Freeman,* 132 Iowa, 356; *Perrin v. Chidester,* 159 Iowa, 31; *Graves v. White,* 87 N. Y. 463.

2. SAME: vendor and vendee: rights and remedies.

If the vendor elects the first remedy above stated, it is necessarily contradictory to all right of the defaulting vendee to recover back advance payments already made. In such a case the vendor who is entitled to recover the balance of the purchase price is, by the same right, entitled to hold the previous payments made on such purchase price. Necessarily, therefore, in such a case the defaulting vendee has no right to recover back any part of his previous payments.

If, however, the vendor elects as his remedy to keep the land, and to claim damages for the breach, the extent of his remedy in such a case is measured by the amount of his damages. If the amount of such damages exceeds the advance payments made by the vendee, the vendor may have such advance payments applied upon the damages, and this would necessarily extinguish the right of the vendee to recover them. *Pritchard v. Mulhall, supra.* If the vendor's damages be less than such advance payments, we know of no sound reason of law or morals why the vendee should not recover the balance remaining.

If the vendor should elect the third remedy above stated, and should declare a rescission *in toto,* this would restore the *status quo* of the parties, and would entitle each party to a restoration. In such a case the vendee would be entitled to recover back his advance payments. *Pedley v. Freeman, supra.*

The following discussion from *Perrin v. Chidester*, 159 Iowa, 31, covers the general ground of the mutual rights and liabilities of vendor and vendee in such a case: "We may first dispose of a general contention made for Stout that there was a mutual rescission and abandonment of the contract of purchase. If that be true, then Stout would unquestionably be entitled to a return of the money paid by him. *Anderson v. Haskell*, 45 Iowa, 45; *Burge v. Railroad Co.*, 32 Iowa, 101; *Frederick v. Davis*, 133 Iowa, 362; *Myers v. Townsend*, 103 Iowa, 569; *Irish v. Martin* (Iowa), 113 N. W. Rep. 470; *Wood v. Whitton*, 66 Iowa, 295; *Tague v. McColm*, 145 Iowa, 179; *Reiger v. Turley*, 151 Iowa, 491. On the other hand, if the referees were not at fault, and Stout, the bidder, without justifiable excuse, refused to complete the contract by paying the balance of the purchase money, and taking title to the land —that is, such title as the referees were authorized to convey— then Stout was not entitled to a return of the money paid; but the referees had an election to sue him for the balance due by action for specific performance, or to secure an order for the resale of the land, retaining the amount paid to reimburse them for any damages which might follow because of Stout's failure to comply with his contract; these damages, of course, being the difference between the amount of his bid and the amount obtained at the resale. *Downey v. Riggs*, 102 Iowa, 88; *Claude v. Richardson*, 127 Iowa, 623; *Thompson v. Brown*, 106 Iowa, 367; *Austin Mfg. Co. v. Decker*, 109 Iowa, 277; *Olson v. Sortedahl*, 143 Iowa, 166; *Simmons v. Sefrit* (Iowa), 125 N. W. Rep. 93. This is but a familiar application of the rule that a party cannot profit by his own wrong."

In the case before us the vendors, defendants, though declaring default and breach by the vendee, did not elect to insist upon performance. They did elect to terminate the contract, and to keep the land. So electing, they leased the land for the ensuing year, and put it out of their power to further perform. This they did on March 7th. Whether they elected in the first instance to claim damages for alleged

3. SAME: breach of contract: damages: application of advance payments.

breach of the contract, or only to declare a rescission of the contract, might be regarded as in dispute under the evidence. They did one or the other. The most favorable view to be taken for the defendants is that they elected to claim damages in the first instance, and not to declare a rescission. They responded to plaintiff's petition herein with a counterclaim for such damages. They did not then tender performance of the original contract, nor ask performance thereof by the plaintiff. By their own election, therefore, the utmost to which they could be entitled would be the amount of damages sustained by them. If the amount of such damages was more than $2,000, they were entitled to apply the $2,000 thereon. If less, they were entitled to offset such lesser amount against the advance payments in their hands. Any different rule as contended for by defendants would amount to a declaration of forfeiture, and would violate the provisions of the statute already referred to. Code, secs. 2499-4301.

In support of the instruction above set forth, the defendants, appellees, cite *Downey v. Riggs*, 102 Iowa, 88; *Claude v. Richardson*, 127 Iowa, 623; *Perrin v. Chidester, supra.*

There are expressions in some of the foregoing cases which, separated from their context, tend to sustain appellees' argument. Such expressions, however, are all argumentative, and should be considered with reference to the record in the particular case.

In *Downey v. Riggs*, the question involved was presented by demurrer to an answer. The vendee in that case had made an advance payment of $100. He sued to recover the same. The vendor, defendant, answered that, the vendee being in default, the defendant, vendor, consented to a *conditional* rescission of the contract; the condition pleaded being that the vendor should retain the $100 advance payment. To such answer the vendee, plaintiff, filed a demurrer. All that was decided here in the *Downey* case was that such answer presented a good defense, and that the demurrer thereto should have been overruled. The discussion in the opinion is some-

what broader than the point involved. Such discussion included citations and quotations from the courts of other states. Some of these quotations furnish ground for appellees' present argument. At most they were *dictum, arguendo,* and should not be considered with reference to the point decided in the case.

In *Claude v. Richardson,* 127 Iowa, 623, the defendant, vendor, kept his tender good, and elected the first remedy above stated, and demanded performance by the vendee, plaintiff. As already indicated, election of such remedy by the vendee not in default necessarily precluded all right of recovery by the defaulting vendor. It did appear in that case that the vendee, defendant, had subsequently conveyed the land to his father; but it also appeared that he conveyed it subject to the contract with the plaintiff, and with an agreement that his father should perform such contract.

In *Perrin v. Chidester, supra,* the plaintiff, vendee, bought the land at a public judicial sale held by referees in a partition case. Upon the acceptance of plaintiff's bid, he paid $500 of the purchase price to the referees. He afterwards refused to perform. In pursuance of an appropriate order of the court, the referees resold the land at a loss of $1,080; this being the difference between plaintiff's bid and the price obtained at the resale. After the resale, plaintiff brought his action against the referees to recover the $500 paid. The referees claimed damages caused by plaintiff's breach to the extent of $1,080, and claimed the right to apply the $500 upon such damages. Such right was sustained both in the lower court and here.

It will be seen, therefore, that there was nothing in the points actually decided in any of the foregoing cases contrary to our present holding, although some broad expressions are contained in the discussions which we would not be willing to apply to such a case as the one before us.

II. Was the defendants' tender on the night of March 1st sufficient to put the plaintiff in default? As already indi-

cated, time was not of the very essence of the contract. The

**4. SAME: contract of sale: performance.**

duty of performance by vendor and vendee is ordinarily mutual and simultaneous. *Totty v. Harris*, 82 Iowa, 645. It is the duty of both to be ready to perform; but neither is bound to perform in advance of the other in any appreciable sense, unless the contract so provides. If, upon the day fixed, both fail to perform, neither is in default, and the contract is still binding upon both. Mere delay, acquiesced in by both parties, will not necessarily terminate the contract. Either party, however, being himself ready and able to perform, may terminate the delay, and put the other party in default, by a tender of performance on his own part. *Claude v. Richardson*, 127 Iowa, 623; *Martin v. Roberts*, 127 Iowa, 218.

Applying this rule to the case before us, was the defendants' tender on the night of March 1st sufficient to answer the call of the contract? Were they ready and able then and

**5. SAME: tender of performance.**

there to comply with the contract on their own part? We have already recited the facts bearing upon that question. Under these undisputed facts, were they then entitled to demand and receive from the plaintiff the purchase price called for by the contract? If not, their demand was premature as being made before they themselves were ready. It will be granted that the defendants were entitled to the co-operation of the plaintiff, and to a reasonable time to put the Compton deed of record, and to extend their abstract of title to date, before they themselves could be put in default. However, the fact that they were entitled to a reasonable time, and could not therefore be put suddenly in default on March 1st, conferred no affirmative right upon them to put the plaintiff in default on March 1st, in advance of their own ability to comply with the contract. They could not anticipate as done that which the contract required them to do, and which they intended to do within a reasonable time, and to base thereon a demand of immediate payment on March 1st. While they were entitled to the fair

co-operation of the plaintiff, such duty of co-operation extended no further than the obligations imposed by the contract. To obtain the title from Compton, and to make the same of record, and to make the title comply with the requirements of the contract, and to extend the abstract of title to the appropriate date whereby the actual condition of the title could be made to appear thereon—as to all these matters the duty was exclusively theirs, and they had no legal right to demand assistance from the plaintiff in relation thereto. Under the contract the plaintiff was entitled to a record title, and to a true abstract of title showing the state of the record up to the date of conveyance. *Spooner v. Cross,* 127 Iowa, 259; *Fagen v. Hook,* 134 Iowa, 381; *Lessenich v. Sellers,* 119 Iowa, 314; *Brown v. Widen* (Iowa), 103 N. W. Rep. 158; *Martin v. Roberts, supra.*

We think that the evidence in this record is insufficient to show that the defendants' tender of March 1st fairly met the requirements of the contract, or to show that the defendants were able on the day of the tender to fairly meet all the requirements of their contract. The abstract was not brought to date. If it had been, it would not have shown the real state of the title, because instruments affecting the title were yet withheld from the record by the defendants. While the defendants, as already indicated, may have been entitled to a reasonable time after March 1st to place their instruments of record, and to complete their abstract, such privilege could not enable them affirmatively to put the plaintiff in default by a premature demand on March 1st.

It is strenuously urged, however, that the plaintiff waived his right to object to the sufficiency of the tender by his failure to make objection on the night thereof. It is said that he made no objection to the abstract, and that his right of objection was thereby waived.

6. SAME: tender of title: objection: waiver.

The testimony of the defendants themselves shows that what the plaintiff did was to request or direct that the papers

be delivered to his attorney at West Liberty. No objection was made to this request by the defendants. As a matter of law the plaintiff was entitled to a reasonable opportunity to examine the papers thus tendered. The plaintiff was a farmer. Nothing could be more clearly reasonable than that he should desire to submit such papers to the examination of his attorney. Special reliance is had by appellees upon Code, sec. 3063, which provides as follows: ''The person to whom a tender is made must, at the time, make any objection which he may have to the money, instrument or property tendered, or he will be deemed to have waived it.''

We do not think that an abstract of title should be construed as an ''instrument'' within the meaning of this statute. To say that a nonprofessional man should be required to make specific objections *instanter* to an abstract of title upon presentation would be so manifestly unreasonable that such a construction ought not to be put upon the statute, unless clearly required by its express terms. We see no such requirement here. This statute has a clear and manifest field of application where it operates reasonably and naturally. For instance, if a party proposes to object to an offer of a *check* or *draft* in lieu of *money,* it devolves upon him to say so when the offer is made. We hold, therefore, that the mere failure of the plaintiff to point out the defects in the tendered abstract on the night of March 1st was not of itself a waiver.

If there were an arbitrary refusal on the part of. the plaintiff to have anything to do with the abstract, a different question would be presented.

It should be said for the defendants that the two mortgages of $5,000 and $6,000 respectively had in fact been paid, though the releases therefor had not yet been filed for record; that the $25,000 mortgage was payable at any time, and that the amount thereof was much less than the amount to become due from the plaintiff. If the plaintiff had attempted to put the defendants in default, these circumstances might be an

important consideration in favor of the defendants. But they availed nothing to the defendants for aggressive purposes.

To put the situation briefly, it was that on March 1st there was no default, and that on March 2d the contract was still alive. Nor are we prepared to say that the filing of the $25,000 mortgage on March 2d necessarily put 7. SAME: breach of contract: action for price. it out of the power of the defendants to perform their contract. *Claude v. Richardson, supra.* If the plaintiff had seen fit to tender performance on his part on or after March 2d, the defendants could have saved their default by paying off such mortgage, and accepting the tender. They do not appear to have been lacking in financial credit for that purpose. What transpired between these parties between March 2d and March 7th appears only in the pleadings and in the arguments. The evidence is silent thereon. For the purpose of this case, we must assume, therefore, that the mutual obligations of the contract continued up to March 7th, when the defendants leased the premises to another for the ensuing year. This clearly put it out of the power of the defendants to perform.

In the absence of a showing of breach or default by the plaintiff prior to such time, he would be entitled to a directed verdict for the amount of his payments. Such is the state of the present record. For the reasons indicated, a new trial must be awarded, and the judgment below is accordingly reversed and the case remanded.

*Reversed* and *Remanded.*

LADD, C. J., and WEAVER and PRESTON, JJ., concurring.