D. W. BATES, Superintendent of Banking, Receiver, Appellant,
v. CITIZENS & SOUTHERN NATIONAL BANK, Administrator,
et al., Defendants, Appellees; UNKNOWN AND UNDE-
TERMINED BENEFICIARIES under the Will of
Maro P. Snell, et al., Defendants.

No. 43687.

APRIL 6, 1937.

Frank Porter and T. J. Mahoney, for appellant.

Dyer, Jordan & Dyer, for appellees.

PARSONS, J.—The plaintiff in this case is the Superintendent of Banking of the State of Iowa, and receiver of the Security Savings Bank of Boone, Iowa, and as such receiver, brought this suit to quiet title to 90 acres of land in Boone county, said land being described as follows:

"The West Sixty Acres of the West One-Half of the Northwest Quarter and the West Thirty Acres of the Northwest Quarter of the Southwest Quarter of Section 16, Township 84 North, Range 28, West of the Fifth, P. M., Boone County, Iowa, said West Sixty Acres of the West One-Half of the Northwest Quarter being also described as the West Sixty of the Northwest Quarter of said Section 16."

The petition alleged that Maro P. Snell, in his lifetime, was the owner of an undivided one-half interest in and to said land. That the said Maro P. Snell is now deceased, and that he left a will which has been admitted to probate in the State of Georgia, and the defendant, Citizens & Southern National Bank of Macon, Georgia, is the administrator with the will annexed of the estate of Maro P. Snell; that the will had not been admitted to probate in the State of Iowa; and that if Maro P. Snell had died intestate his heirs at law would have been the children of J. Judson Snell, a brother who predeceased Maro P. Snell, said children being: Eloise Winifred Snell, Judith Judson Snell Crary, and Palmer H. Snell; that while the will has not been probated in Iowa, it may still be probated therein; and that the First Congregational Church of Ogden, Iowa, and the Congregational Society of Iowa have an interest in the property of Maro P. Snell, and are made parties to this action; that under the will it is impossible to determine who the beneficiaries of the estate of Maro P. Snell will be, and that the unknown and undetermined number of beneficiaries had been made defendants in order that all parties having an interest in and to the premises might have their rights adjudicated in the action. It is alleged that the several owners of the land are unable to mutually agree upon a division thereof; that said premises cannot be divided into parcels proportionately, and the petition prayed to have title quieted therein.

The defendant, Citizens & Southern National Bank of Macon, Georgia, as administrator, filed an answer admitting all the allegations of the petition, and setting forth the claim that the

said Citizens & Southern National Bank, as administrator, had negotiated for the purchase from plaintiff of its undivided interest in the real estate, and claimed it had an agreement for the purchase of said property. In an amendment to the answer it set forth what it claimed were the facts which bound the plaintiff to convey the property to the defendant bank. The Georgia bank further alleged that the letter it wrote to J. W. Jordan on February 26, 1935, which is mentioned in the answer, was an acceptance by it of the written offer to sell an undivided one-half interest in the real property, and an acceptance of all the terms mentioned therein. And that such correspondence constituted a valid and binding contract; and set forth that the Securities Savings Bank had made application to the court to sell and convey to the defendant in pursuance of the terms of the contract; and the plaintiff is barred and estopped from claiming that no valid contract exists between the parties for the sale and purchase thereof. The defendant prayed not only for a dismissal of plaintiff's petition, but that plaintiff be required to make specific performance of the contract, and for general relief.

The reply of the plaintiff admits it had some negotiations for the sale of the interest to the defendant bank as administrator, but avers that the negotiations never resulted in a contract of sale.

Trial being had, the court entered a decree for the defendant, the decretal part of same being as follows:

"It is accordingly ORDERED, ADJUDGED and DECREED, that the plaintiff be required to convey to the defendant bank by receiver's deed the real estate in controversy, namely an undivided one-half interest in the West Sixty Acres of the West Half of the Northwest Quarter and the West Thirty Acres of the Northwest Quarter of the Southwest Quarter of Section 16, Township 84, Range 28, Boone County, Iowa, subject to the payment of all unpaid taxes, which taxes are to be paid by the defendant bank; such deed to be delivered upon payment by the defendant of the sum of twenty-two hundred fifty dollars and tender of a sufficient amount to pay all delinquent taxes against said real estate. The defendant bank is given ten days from the filing of this decree within which to pay or tender the amount of said purchase price and taxes and the plaintiff is granted twenty days additional

time within which to execute and deliver the deed above referred to.''

From this decree the plaintiff has appealed to this court.

The district court in its decision set forth as ruling, order and decree stated as follows:

."This cause was tried on the twenty-second day of November, 1935. At a subsequent date the case was argued orally; and still later written briefs were furnished by the attorneys. By consent of parties and order of court the case was taken under advisement to be decided at a later time with the same force and effect as if ruling and order were made during the regular November 1935 term.

"The plaintiff claims, in effect, that he is not required to convey the land in question to the defendant bank because no valid contract therefor was ever entered into between the parties. That at most the plaintiff made an offer to sell to the defendant, such acceptance being subject to the approval of the court, and that the offer was withdrawn and a higher price demanded before such approval was had; that the situation is similar to the withdrawal of an offer before it has been accepted.

"I feel that a valid contract was entered into between the parties; that the writing, of which Exhibit 'B' is a copy, and the letter, Exhibit 'A', define the terms of the contract. It is true that both the plaintiff's offer to sell and the defendant's acceptance was subject to court approval and neither party was absolutely bound prior to such approval. The transaction so far as the plaintiff was concerned was approved by order of court under date of April 29, 1935, pursuant to the application of April eighteenth. The fair inference is that the Georgia court approved the purchase shortly prior to the time of trial. Even though the acceptance of the defendant was originally subject to the approval of the court it seems to me the contract is not wanting in consideration. The acceptance, even though subject to this qualification, was a thing of value. By letter of July 1, 1935, the examiner, Hargrove, was notified that the defendant was proceeding with court action to get the necessary approval which would not be procured until November. Mr. Hargrove apparently acquiesced in this action on defendants' part and made no objection thereto until October 24th, when by letter

(Exhibit 3) he attempted to raise the price of the farm from twenty-two hundred fifty to three thousand dollars.

"It is possible that the receiver could have rescinded the contract prior to the defendants' having procured authority of court to make the purchase, on the ground that the defendant was not bound to purchase the property. However this may be, Exhibit 3 does not amount to such a notice of rescission, nor is the plaintiff's attempt to raise the price based in any way upon the fact that the defendants' acceptance was subject to court approval. Not having assigned this as a ground for repudiating the contract I doubt if plaintiff is in position to avail himself thereof at this time. Somewhat in point is the case of Kettering v. Eastlack, 130 Iowa 498, 107 N. W. 177, 8 Ann. Cas. 357, which was an action for specific performance of a contract to sell a homestead brought by a vendor whose wife did not sign the contract when it was originally made. Subsequently the wife signed one copy of the contract and joined the husband in executing deed. The purchaser had made an attempt to repudiate the contract but not on the ground that the wife had not joined therein. In holding that the vendor was entitled to specific performance the court says, at page 500:

'Unless the defendants had repudiated their contract on the ground that the wife had not joined in its execution, and assigned that as a reason for repudiation, prior to the action of plaintiff's wife in signing the duplicate and notifying defendants of her willingness to carry out the contract as thus signed, we think the contract may now be specifically enforced.'

"Any lack of obligation on the part of the defendant to make the purchase which may have existed prior to the granting of court approval seems now to be removed. At any rate it should make no difference to the plaintiff whether the contract has now been approved by the Georgia court if plaintiff gets his money for the farm.

"The delay in performance by the defendant is not controlling. Time was not of the essence of the contract. The plaintiff at no time tendered performance on his part, coupled with a demand for performance by the defendant. Mr. Hargrove testified that down to about October twenty-fourth he stood willing to carry out the contract. His only apparent ob-

jection at the time of the trial was that a depositors' committee was objecting to the transaction.

"That the defendant has not lost its right by reason of delay, see, Waters v. Pearson, 163 Iowa 391, at page 403, 144 N. W. 1026, 1031, where the court says:

'Mere delay, acquiesced in by both parties, will not necessarily terminate the contract. Either party, however, being himself ready and able to perform, may terminate the delay, and put the other party in default, by a tender of performance on his own part.'

"It is not shown that any inequity or hardship would result from enforcing the contract. After impliedly inducing the defendant to go to the trouble and expense of procuring the approval of the court to make this purchase it does not seem that plaintiff should be able to avoid performing the contract on the ground that if defendant had refused to perform, plaintiff could not have enforced such performance against the defendant.

"It is my conclusion that the defendant is entitled to a decree of specific performance.

"It is accordingly ORDERED, ADJUDGED and DECREED, that the plaintiff be required to convey to the defendant bank by receiver's deed the real estate in controversy, namely an undivided one-half interest in the West Sixty Acres of the West Half of the Northwest Quarter and the West Thirty Acres of the Northwest Quarter of the Southwest Quarter of Section 16, Township 84, Range 28, Boone County, Iowa, subject to the payment of all unpaid taxes, which taxes are to be paid by the defendant bank; such deed to be delivered upon payment by the defendant of the sum of twenty-two hundred fifty dollars and tender of a sufficient amount to pay all delinquent taxes against said real estate. The defendant bank is given ten days from the filing of this decree within which to pay or tender the amount of said purchase price and taxes and the plaintiff is granted twenty days additional time within which to execute and deliver the deed above referred to.

"Some question may arise in connection with the performance or offer to perform by one or both parties pursuant to this decree. The cause is hereby continued and jurisdiction reserved for the purpose of determining any such question and for the

purpose, if necessary, of enforcing compliance with the terms of this decree.

"To all of which due exception is granted to both plaintiff and the defendant bank."

The letter, Exhibit 3, referred to in the court's opinion, was as follows:

## "EXHIBIT 3

October 24, 1935

Mr. John Jordan
Attorney at Law
Boone, Iowa

In re: Security Savings Bank
J. J. Snell Farm

Dear Mr. Jordan:

We are now in position to give you something definite on the proposed sale of the Security Savings Bank's interest in the J. J. Snell 90 acre farm to the Estate of the M. P. Snell.

The Depositors Committee in this receivership completed an inspection of the above land yesterday and are opposed to a sale on the basis of the original negotiations of last March or April.

We can sell you our undivided one-half interest on the following basis:

Consideration, $3,000.00; Security Savings Bank to retain its share of the 1934 and 1935 rent less whatever amount would be required to pay our share of the taxes against this land.

I think you will understand this proposition. We are holding a draft for $126.73 representing 45/250ths of the 1934 rent less some repairs. Mr. Shipley, the tenant, will owe $1000.00 as rent for the year 1935 of which the Security Savings Bank would be entitled to 45/250ths. From the rent to be collected for the year 1935 we will be willing that an amount be retained to take care of the half share of taxes due on the 90 acres.

If this is not plain please call me by telephone and I will come to your office and discuss this with you.

Please submit this proposition to the executor or trustee at Macon, Georgia and if they care to buy us out we would like to have this information, if they do not care to buy us out it is our plan to proceed with a partition suit.

Yours very truly,

,....................
George C. Hargrove,
Examiner in Charge"

GCH :E

This letter was written by Mr. Hargrove who was .the examiner in charge of the Security Savings Bank under the direction of the receiver, plaintiff.

Exhibits A and B, to which the judge referred in the opinion, were as follows:

"EXHIBIT A

The Citizens and Southern National Bank
Macon, Georgia

TRUST DEPARTMENT

February 26, 1935

Dyer, Jordan & Dyer,
Boone, Iowa
Gentlemen:

Attention: Mr. J. W. Jordan
Re: M. P. Snell Estate

We refer to your letter of the 14th. We regret that Mr. Hargrove of the Security Savings Bank does not see fit to accept our offer for its undivided one-half interest of the ninety acre tract of the J. J. Snell Estate as we felt that we were offering him the maximum amount at $2000.00; however I feel that we are too close together to permit the difference between us to upset the trade.

I would be glad if you would make a further effort to get him to accept the offer which we submitted, and if not, then make the best trade you can with him within the limits of $2250.-00 and advise us when you have definitely closed the trade, all of which, of course is subject to obtaining the necessary court orders.

That there may be no misunderstanding, we restate Mr. Hargrove's proposal as we understand it. We are to pay him $2250.00 and to assume the payment of all delinquent taxes on the property, he to retain the $36.58 which you remitted to him some weeks ago on account of last year's rent, and the M. P. Snell Estate to receive the entire balance of the rents on their share of the property.

With reference to Mr. Shipley for another year, I think your suggestion in regard to that is very good and I would be very glad if you would handle the matter with Mr. Shipley along the line that you suggest. I see no particular objection to Mr. Shipley holding on to his corn for a while longer, but I think there should be specified a time limit within which it is to be sold.

With reference to the taxes, if it is all right, I would just let this matter stand until it is seen what your legislature is going to do toward relieving the tax payer of the penalties that have accrued on delinquent taxes and just as soon as that is decided, we can then take steps to pay such taxes as are then due.

We will await your further advices in these matters.

Very truly yours,
E. C. Scott (Signed)
Vice-President and Trust Officer.''

''EXHIBIT B

February 6, 1935

Mr. J. W. Jordan,
Boone,

Re: Security Savings Bank—
J. J. Snell Farm

Dear Mr. Jordan:

Please advise the Executor of the M. P. Snell Estate at Macon, Georgia that we will recommend to the Banking Department for their approval, also subject to obtaining the necessary Court Order, on sale of the undivided one-half interest of the Security Savings Bank in the ninety acre tract known as the J. J. Snell Farm for the sum of $2,250, the purchaser to assume and to pay the delinquent taxes thereon. We to retain the income which you reported in your letter of January 19, 1935, but the M. P. Snell Estate to receive the balance of our share of the 1934 rent due from the tenant T. C. Shipley when same is paid.

We feel that this offer is very advantageous to the M. P. Snell Estate and that our interest in the ninety acres should be worth far more than the price we are offering to take. The offer is only made for the reason the bank is in liquidation and the assets must be converted into cash. Should the Estate of M. P. Snell buy our interest in this ninety acres the 160 acres across the road west can be divided so that Mrs. Nelson will receive

eighty acres and the M. P. Snell Estate eighty acres and then the M. P. Snell Estate will have (should they buy our interest) 170 acres with buildings and improvements thereon.

Please transmit our offer to the bank at Macon, Georgia, advise us when you have reply. By the way we have a partition suit started which of course will be dismissed should they buy out our interest.

Yours very truly,
George Hargrove,
Examiner in Charge.''

The record further shows that on the 18th day of April, 1935, plaintiff filed an application in the district court of Boone County, Iowa, for authority to sell and convey the undivided one-half interest in these premises to the M. P. Snell Estate for the sum of $2,250.00; which application was granted and the receiver was authorized upon receipt of the sum of $2,250 to execute a receiver's deed for said undivided half interest, and submit same to the court for approval; along with the receiver's deed the receiver was authorized to deliver his assignment of the lease and the right to collect all delinquent rents; and was authorized to incur such expenses as may be necessary to bring the abstract up to date and to dismiss the partition case and pay the costs thereof; and to charge off on the books of the bank the excess of the carrying charge over and above the amount received.

We think the district court was right in holding there was a valid contract of sale existing between the parties, and cannot now get out of the contract so made; that the decree should be affirmed; however, with this modification: that the representatives of the Snell Estate be allowed thirty days after receiving notice from the receiver to tender payment for the premises, and that upon tendering of said amount, to be fixed by the court, that the receiver deliver deed and abstract within thirty days from the time of said tender, and further, that should the defendant, appellee, fail to tender the payment within thirty days after such notice from the receiver, then the court shall proceed in this under the decree as made by the district court.

It appears to us to be the only absolutely fair solution of the deal. Judge Garfield was right in his decision, and there is nothing urged in the case, or shown, which calls for any other disposition than the disposition we have made in the case. We

have examined all the authorities cited by both parties and find nothing in them which in any way conflicts with the entry of such a decree. So it is ordered that the decree in this case be modified in the particulars above set out, and be remanded to the district court of Boone County, Iowa, for the purpose of entering and carrying out such a decree in said court, in conformity with this opinion.—Modified and affirmed.

RICHARDS, C. J., and SAGER, KINTZINGER, HAMILTON, DONEGAN, STIGER, MITCHELL, and ANDERSON, JJ., concur.