## 31527. SMITH *v.* KNIGHT.

DECIDED APRIL 25, 1947. REHEARING DENIED MAY 15, 1947.

*Smith, Partridge, Field & Doremus,* for plaintiff in error.
*Douglas, Evans & Cole,* contra.

SUTTON, C. J.   A. S. Knight sued R. L. Smith to recover $425 alleged to be due by reason of the fact that the defendant entered into a binding contract with the plaintiff for the purchase and sale of certain real property, in which the defendant defaulted, the contract providing that the defendant would pay the real-estate commission in the event of his default.   The judge trying the case without a jury found for the plaintiff.   The defendant's motion for a new trial as amended was overruled and he excepted.

There was evidence from which the judge, trying the case without a jury, was authorized to find that Knight listed his property for sale with Berry Realty Company at a price of $9500. Harper, an agent of the realty company, contacted Smith and endeavored to sell him the property at the price listed, $9500. Smith declined to purchase it at this price, but made a counter offer, in writing, to purchase the property for $8500 and to prorate the 1945 taxes, and gave the agent his check for $100 as earnest money.

When this counter offer was presented to Knight, by the agent, Knight told him to see if Smith would not pay the full year's taxes. When Harper telephoned Smith about the taxes, Smith told him "No, he would not go any more, that his contract was just as he gave it; if Mr. Knight wanted that, O. K. he would take the house, if he didn't, he would forget about it." That Harper told Knight of the conversation, and Knight accepted the written offer made by Smith and executed a written acceptance and gave it to the agent, who notified Smith of said acceptance in the manner and as requested by Smith.

Later, Smith stated that his wife had not seen the property and he wanted to know if he could wait until after his wife saw it to decide whether or not to accept it. Harper told Smith that Knight had already accepted his offer and that it was "up to" Knight. When the agent saw Knight, he stated that he had made other plans and that he wanted to go through with his contract with Smith. It was after that, that Smith stated that he had found another house and was going to buy it, and that Harper could discuss the matter with his lawyer.

When Smith sent Knight the written offer to purchase the property for $8500 and to prorate the taxes for 1945 and Knight accepted this offer and executed a written acceptance thereof and turned the same over to Harper, who notified Smith of such acceptance, a valid contract arose between the parties for the sale of the property on the terms stated in the written offer, and the broker's commission was earned. Code, § 4-213; *Landrum* v. *Lipscomb-Ellis Co.*, 62 *Ga. App.* 649 (9 S. E. 2d, 205); *Cox* v. *Dolvin Realty Company*, 56 *Ga. App.* 649 (2) (193 S. E. 467); *Payne* v. *Ponder*, 139 *Ga.* 283 (77 S. E. 32). And when Smith refused to comply with his contract to purchase said property and Knight paid the broker his commission, he was then entitled to maintain an action against Smith for damages for a breach of the contract in the amount of the commission so paid by him, this being the amount which he had been endamaged. "Under our statute of frauds any contract for the sale of lands, to be binding upon the promisor, 'must be in writing, signed by the party to be charged therewith, or by some person by him lawfully authorized.' [Code, § 20-401 (4)] Under this statute, if the contract of sale is otherwise sufficient, and is assented to by him to whom the propo-

180

sition has been made, the contract is consummated by the meeting of the minds of the two parties, and the evidence necessary to render it valid and capable of enforcement is supplied by the signature of the party sought to be charged by the offer to sell or to buy." *Fraser* v. *Jarrett*, 153 *Ga.* 441, 448 (112 S. E. 487), and citations. "A contract for sale of real estate is valid and binding where it is in writing and contains the following essentials: (1) it must specify the parties, that is, the seller and the buyer; (2) it must sufficiently describe the subject-matter of the contract; and (3) it must name the consideration." *Baker* v. *Lilienthal*, 176 *Ga.* 802, 806 (169 S. E. 28).

There was some conflict in the evidence, but the trial judge was authorized to find from the evidence that a valid and enforceable contract in writing existed between the parties for the sale of the property on the terms stated in the offer made by Smith and accepted by Knight and he so found and rendered a judgment in favor of the plaintiff for the amount of the broker's commission expended by him on account of the contract. The defendant's motion for a new trial was overruled, and we think that the judgment should be affirmed.

Pursuant to the act of the General Assembly, approved March 8, 1945 (Ga. L. 1945, p. 232), requiring that the full court consider any case in which one of the judges of a division may dissent, this case was considered and decided by the court as a whole.

*Judgment affirmed. Sutton, C. J., Gardner and Parker, JJ., concur. MacIntyre, P. J., and Townsend, J., concur specially. Felton, J., dissents.*

MacIntyre, P. J., concurring specially. The evidence authorized a finding that Knight listed in writing with a real-estate broker certain described real estate at a price of $9500. The broker offered it for sale to Smith at this price. This offer was declined. Smith, however, made a counter offer of $8500 and gave the broker a check for $100 to be considered as earnest money if the counter offer was accepted. Thereafter, Knight wrote out an acceptance of this counter offer and delivered it to the broker who communicated with Smith in the manner prescribed by Smith and told him that Knight had accepted Smith's counter offer of $8500 in writing and had delivered the written acceptance to him, the broker. A few days later Smith notified the broker that he would not take the property.

I think the contract of sale was completed, for "an acceptance is authorized to be sent by the means used by the offeror . . unless the terms of the offer or surrounding circumstances known to the offeree otherwise indicate." Restatement of the Law of Contracts, American Law Institute, § 66. When Knight was the offeror, he used the broker as the *means* through which Smith was authorized to accept his offer, and when Smith made the counter offer, he was in effect the offeror and used this same broker as the means through which Knight was authorized to accept the terms of his offer or counter offer, and in neither case did the terms of the offer or the surrounding circumstances indicate otherwise.

The contract for the sale of the real estate being thus completed, its terms were of force, and under its terms the plaintiff was entitled to recover. Restatement of the Law of Contracts, American Law Institute, §§ 64-69.

I am authorized to say that Townsend, J., agrees with this special concurrence.

FELTON, J., dissenting. There is no evidence that the plaintiff ever put it out of his power to recall the signed contract. The defendant withdrew his offer before valid acceptance. There was no delivery of a written acceptance to the defendant or to any one authorized by the defendant to receive it. "To make the following obligations binding on the promisor, the promise must be in writing, signed by the party to be charged therewith, or some person by him lawfully authorized, viz. . . 4. Any contract for the sale of lands, or any interest in, or concerning them. Code, § 20-401. To render a bilateral contract valid it must be binding on both parties. *National Surety Co.* v. *Atlanta,* 24 *Ga. App.* 732 (102 S. E. 175); *Aspironal Laboratories Inc.* v. *Rosenblatt,* 34 *Ga. App.* 255 (129 S. E. 140); *Buick Motor Co.* v. *Thompson,* 138 *Ga.* 282 (75 S. E. 354); *Friedman* v. *Ware,* 17 *Ga. App.* 677 (87 S. E. 1099). While our statute of frauds says nothing about the delivery of the writing we think it is clearly the law that for a written proposal to be fully and completely accepted in writing, the party accepting must put the acceptance beyond his power to recall. Of course, delivery is contemplated. Judge Powell, speaking for the court in *Denton* v. *Butler,* 7 *Ga. App.* 268 (66 S. E. 810), stated: "The written contract would not necessarily be complete with the physical signing of the paper, nor until it

was delivered, or left with, the plaintiff as the consummation of the agreement between the parties." See 12 Am. Jur. § 63, p. 553 and notes. "There is no delivery so long as the instrument remains in the possession or under the control of the grantor." Schmidt *v.* Barr, 283 S. W. 1115 (Tex. Civ. App.). See also *Peacock* v. *Horn,* 159 *Ga.* 707 (126 S. E. 813) ; *O'Neal* v. *Brown,* 67 *Ga.* 707. An oral communication of the fact of signing is not an acceptance in writing for the reason that it does not put it beyond the power of the plaintiff to destroy the contract or withdraw his acceptance and leaves the evidence of the time of signing solely dependent upon parol. *F. & W. Grand Stores* v. *Eiseman,* 160 *Ga.* 321 (127 S. E. 872)., Under the facts of this case the contract was not binding on the plaintiff because he did not accept the offer in writing and before the defendant withdrew his offer and the plaintiff did nothing to make the contract binding upon him before withdrawal such as instituting suit for enforcement. *Perry* v. *Paschal,* 103 *Ga.* 137 (29 S. E. 703) ; *Harrell* v. *Williams,* 159 *Ga.* 230 (125 S. E. 452). It is impossible for me to ascertain upon what theory the majority opinion bases its conclusion that there was a valid and binding contract. The concurring opinion places it on the theory that the buyer authorized the broker to receive the acceptance as his agent. The buyer here gave no such authority from the mere making of the offer through the seller's agent. *Winer* v. *Flournoy Realty Co.,* 27 *Ga. App.* 87 (3) (107 S. E. 398). While it is true that "an acceptance may be transmitted by any means which the offeror has authorized the offeree to use and, if so transmitted, is operative and completes the contract as soon as put out of the offeree's possession without regard to whether it ever reaches the offeror, unless the offer otherwise provides" (Restatement of the Law of Contracts, Vol. I, § 64, p. 70), in my opinion, this rule does not apply where the method of transmission is a party's agent in the negotiation and only applies where the offeror selects as a means of transmission an independent agency which becomes the agent of both parties for the purposes of delivery only, such as the mails or telegraph or independent messenger service. Dual agency, unless known to both parties, is contrary to public policy, and in such a case as this might subject the broker to a temptation which the law seeks to avoid. If, while the completely executed contract was still in the possession

of the broker, the seller had changed his mind and had demanded the possession of the contract for the purposes of destroying it, under the theory of the concurring opinion the agent could have refused to deliver it to his own employer, or principal, which in my opinion he could not do. Under such circumstances the agent's loyalty is due to the seller who employed him. Even if there could be a delivery by communicating the fact of signing by the seller to the buyer, there is no evidence that the seller authorized such a communication. This was merely an arrangement between the buyer and broker as a matter of information. I do not think there is a permissible inference that actual delivery of the contract was waived, if that could be done.

I do not find support for the majority's conclusion in any case cited by it.

Since there was no contract, the defendant was not obligated to purchase the property and, therefore, was not bound to pay the real estate commission in the event he defaulted in its performance.