Submit order accordingly.

THE TRUSTEES OF THE FIRST PRESBYTERIAN CHURCH IN NEWARK, A NEW JERSEY CORPORATION, PLAIN-TIFF, v. THE HOWARD COMPANY-JEWELERS, A COR-PORATION OF THE STATE OF NEW JERSEY, DE-FENDANT.

Superior Court of New Jersey
Law Division

Decided April 17, 1952.

*Messrs. Riker, Emery & Danzig (Mr. Everett M. Scherer, appearing), attorneys for plaintiff.*

*Messrs. Osborne, Cornish & Scheck (Mr. John J. Clancy, appearing; Mr. Herman J. Harris, on the brief), attorneys for defendant.*

COLIE, J. S. C.   The complaint in this case seeks to recover damages from the defendant arising out of an alleged breach of a contract to lease certain premises located at 807-813 Broad Street, Newark.   The matter, by stipulation, was tried before the court without a jury.

The plaintiff is the owner of premises at 807-813 Broad Street, a portion of which was occupied on May 2, 1950, by I. Hausman & Sons, Inc., under a lease expiring April 30, 1952, providing for a minimum rental of $16,000 a year. On May 2, 1950, the defendant wrote a letter to Ralph G. Schwebemeyer & Co., renting agent of the premises, a copy of which reads as follows:

"May 2nd, 1950.

Ralph G. Schwebemeyer & Co.
744 Broad Street
Newark 2, New Jersey
Gentlemen:

Succeeding our numerous discussions of the subject together, we now advise that we are prepared to enter into a lease for the store premises and basement at 813 Broad Street, Newark, New Jersey,

formerly occupied by Hausman Shoes, provided we can do so on the following basis:

(1) The lease term to be six (6) years and eleven (11) months to commence on June 1, 1950 and to terminate on April 30, 1957.

(2) Premises to be devoted to the sale at retail of jewelry and optical goods, men's and women's ready-to-wear and furs, and appliances such as radios, television sets, refrigerators, washing machines, vacuum cleaners, deep freezers, etc.

We agree to pay rental based upon 6% of merchandise sales covering items of jewelry and optical goods and men's and women's wear and furs and a percentage of 3% of the aggregate sales of all items under the appliance category, against which we will pay the following minimum guaranteed rentals:

(1) During the first year and 11 months—from June 1, 1950, to April 30, 1952—at the annual minimum rental of $18,000. payable monthly.

(2) During the next two-year period—from May 1, 1952, to April 30, 1954—at the annual minimum rental of $20,000. payable monthly.

(3) During the next three-year period—from May 1, 1954, to April 30, 1957—at the annual minimum rental of $23,000. payable monthly.

It is our understanding that a termination of the Hausman lease can be effected to the end that we become the direct tenant of the ownership and it is further contemplated that we take the premises in their existing condition and adapt them to our needs and purposes at our own expense.

You have advised us that the landlord will furnish heat and water for sanitary purposes; we, however, understand that all water for other purposes as well as electric current shall be metered to us at our expense.

It is our further understanding that we shall be required carry plate glass insurance and public liability insurance in limits of $50,000., $100,000. for the benefit of the landlord.

If this proposal be approved, it is our intention to take a lease in the name of The Howard Company, Jewelers, a corporation of New Jersey. We have been in business in Newark for upward of 25 years and maintain our principal corporate address at 847 Broad Street, Newark, New Jersey.

Inasmuch as we are now in process of deciding upon our future course of action, it is essential that we have your early advice with respect to the foregoing.

> Very truly yours,
> THE HOWARD COMPANY
> By: Archie Linder Pres."

At a meeting of the trustees held May 4, 1950, the trustees adopted the following resolution:

"In regard to 807-13 Broad Street, Mr. Schwebemeyer was admitted to the meeting. After reporting and answering all questions, it was moved and passed that we reject the offer of the tenant that Hausman has for 807-13 Broad Street. Motion was passed that we accept the exchange of releases between Hausman and the Trustees as Hausman offers, subject to any overages on % sales previous to Hausman vacating.

Mr. Schwebemeyer presented to the meeting a proposal made by the Howard Company dated May 2, 1950, to lease the store and basement at 813 Broad Street. After full consideration, upon motion made, seconded, and unanimously adopted, the Trustees accepted the proposal and authorized Mr. Schwebemeyer to request Mr. Irving Riker to prepare leases embodying the terms of the proposal; a copy of the proposal to be attached to and made part of the minutes."

Thereafter, counsel for the plaintiff prepared a lease which was sent to counsel for the defendant on May 11. According to Mr. Schwebemeyer's testimony, he had a conversation with counsel for the defendant in which it was reported to him that Mr. Linder, the president of the defendant, was very nervous and upset and that there was some question about his going through with the lease obligation to the trustees. Thereafter, Mr. Schwebemeyer reported that the defendant's counsel described Mr. Linder as a nervous man and Mr. Schwebemeyer testified to a conversation with Mr. Linder on the 18th of May in which Mr. Linder reported that he was a sick man and that his degree of nervousness was so acute that he could not do anything and that he had been advised to quit business. In the course of that conversation his counsel stated that Mr. Linder was sick, that the terms of the lease differed from the proposal of May 2 and that Mr. Linder, acting for the corporation, was not obligated to accept the lease. Mr. Linder was not called as a witness in this case to deny having had the conversation testified to by Mr. Schwebemeyer and from the failure to do so, there arises the inference that had he been called, he could not truthfully have done so. His own counsel admitted telling Mr. Schwebemeyer "something about Archie being sick * * * I mean Mr. Linder when I speak of Archie."

The defendant denies any obligation on the theory that the letter of May 2 was a proposal, that the proposed lease

prepared by counsel for the trustees was in effect a counter-proposal which was unacceptable to Mr. Linder and that therefore there was no meeting of the minds, hence no obligation arose thereunder.

The letter of the Howard Company to Mr. Schwebemeyer under date of May 2 and the resolution of the trustees on May 4 constituted an offer and an acceptance. The fact that the action of the trustees was communicated by Mr. Schwebemeyer to Mr. Linder in a telephone conversation prior to the preparation of the lease was undisputed. There was a meeting of the minds as to the premises, the term of the lease, the amount of the rent, the nature of the business to be thereon conducted and that the form of lease prepared by counsel for the trustees was substantially in accord therewith, and constituted the contract between the parties and that the lease was nothing more than an attempt to state those casual and incidental provisions commonly present in a formal and conventional agreement which the parties contemplate shall in due course be prepared and executed. *Volk v. Atlantic Acceptance & Realty Co.*, 139 *N. J. Eq.* 171 (*Ch. 1947*).

Under the expectation that the defendant would comply with its contractual obligation, the trustees released the then tenant, Hausman, from its obligation to pay rent. The period during which the property was vacant was four months and the loss of rent amounted to $6,000. The plaintiff also incurred attorney's fee for services in connection with the lease in the sum of $250. If the plaintiff has established the breach of the contract, there is no serious dispute as to the above elements of damage. There was testimony that the plaintiff is obligated to Mr. Schwebemeyer for broker's commission for securing the Howard Company as a tenant amounting in all to $5,424.16. It is settled law in this State that where a broker produces a lessee ready, able and willing to rent the premises that he then becomes entitled to his commission despite the fact that the prospective tenant did not in fact carry out the rental obligation.

There was a valid contract between the plaintiff and the defendant which the defendant reached. The broker's commission was an item of damage reasonably within the contemplation of the parties at the time the contract was entered into.

Judgment is entered for the plaintiff for $11,674.16 with interest from May 18, 1950.