Ralph N. GORDON and Joyce A. Gordon, Appellees,

v.

Clifford PFAB and Janet Pfab, Appellants,

v.

Tom LEIBOLD, d/b/a Tom Leibold Realty a/k/a Tom Leibold & Associates, Intervenor-Appellee.

No. 2–57414.

Supreme Court of Iowa.

Oct. 20, 1976.

Zastrow, Noah & Smith, Charles City, for appellants.

Nathanson, Slade, Ruffin & Moon, Cedar Rapids, for appellees Gordon.

Timothy S. White, and Lew Eells, Cedar Rapids, for intervenor-appellee Leibold.

Heard by MOORE, C. J., and RAWL-INGS, REES, REYNOLDSON and McCOR-MICK, JJ.

McCORMICK, Justice.

These two appeals arise from plaintiffs' action for damages against defendants for breach of a contract to purchase plaintiffs' farm. Intervenor sought judgment against plaintiffs for the amount of his real estate commission. The trial court found defendants Clifford Pfab and Joyce Pfab (Pfabs) breached the contract and awarded plaintiffs Ralph N. Gordon and Joyce A. Gordon (Gordons) $4,625.50, the amount of the real estate commission reduced by the amount of Pfabs' advance payment, as damages. The court then entered judgment for intervenor Tom Leibold (Leibold) against Gordons in the same amount. Pfabs and Gordons appeal the judgments against them. We affirm the trial court.

The questions on Pfabs' appeal are whether the trial court erred (1) in finding Pfabs waived their right to rescind the contract, (2) in failing to find the contract was mutually rescinded, (3) in not holding the contract unenforceable, and (4) in using an incorrect measure of damages. The questions on Gordons' appeal are whether the court erred (1) in failing to make a larger award of liquidated damages, (2) in awarding Leibold a full real estate commission, and (3) in charging Gordons with 40 percent of the court costs.

The chronology of relevant events is essentially uncontroverted. In August 1970 Gordons listed their 279-acre Linn County farm for sale with Leibold, a Dubuque realtor. The standard listing agreement provided Gordons would pay Leibold a commission equal to six percent of the sale price if Leibold found a buyer during the period of the listing "who shall be ready, willing and able to purchase * * * " the farm at any price and terms agreed upon.

Leibold's employee Jesse McIntyre subsequently secured from Pfabs an offer to purchase the farm for $160,425 by installment contract. On September 18, 1970, Gordons accepted the offer. By two checks, Pfabs made a $5000 advance payment to be held in trust by Leibold until execution of the installment contract, which was to occur on or before March 1, 1971.

Shortly after their offer was accepted, Pfabs investigated the farm's soil-type and productivity records in the local ASC office. They also inquired of Gordons' tenant about the farm's productivity and tilling. In early October 1970, after this investigation, Pfabs stopped payment on their checks for the advance payment of $5000. They were promptly visited by Leibold's salesman McIntyre. After discussing the situation with him, they issued a new check for the $5000 advance payment on October 8, 1970. Clifford Pfab then went to Ralph Gordon to seek an agreement from Gordons which would permit Pfabs to forego principal payments under the contemplated installment purchase contract in any year in which corn

production would be less than one-half of normal yield. A written supplement to the purchase agreement to that effect was pre- pared by Gordons' attorney, but the copy introduced in evidence by Gordons at trial had been executed only by Joyce Gordon.

In early February 1971, Pfabs met Gor- dons and Leibold at the farm and inspected the interior of the house. Pfabs complained of scratches on window sills, damage to carpeting, and the condition of fencing and the farmyard. Gordons offered to have the carpeting cleaned but refused to make any other concessions in response to the com- plaints. Leibold suggested Pfabs were looking for an excuse to back out of the transaction, but Clifford Pfab denied it and told him all he wanted was what he had purchased.

On February 22, 1971, Pfabs sent Gordons a letter communicating their refusal to complete the purchase and requesting re- turn of their $5000 advance payment. They alleged that they had not been told the truth about the property and that it had been damaged after the date of their offer to purchase it.

After receiving this notification, Gordons rented the property to a new tenant for the ensuing crop year. Subsequently they brought the present breach of contract ac- tion against Pfabs, and Leibold intervened, seeking his commission from Gordons.

## PFABS' APPEAL

I. *Pfabs' waiver of rescission.* The trial court found that Leibold's employee McIn- tyre had made four inaccurate statements to Pfabs before they offered to purchase the farm. The court found that two of the inaccuracies, including the matter of soil type, were not material. The court found that the other two inaccuracies, relating to productivity and the amount of tile on the farm, were material but that Pfabs waived any right to rescind the contract because they continued to treat the contract as a subsisting obligation after learning the truth. Moreover, the court found the con- ditions on the farm complained about in February did not establish a new ground for rescission.

Pfabs contend the trial court was wrong. They support this contention by two argu- ments. They maintain waiver could not be based on reissuance of the advance money check because the new check was written only after Leibold's agent McIntyre per- suaded them that the information they obtained in their independent investigation was incorrect. They also argue that waiver could not be based on their receiving addi- tional consideration through Gordons' agreement to allow them to forego princi- pal payments in any year of more than 50 percent crop failure because they deny that any such agreement was proven, relying on trial testimony by Clifford Pfab that he could not recall such agreement being reached and that he never saw the agree- ment in written form.

These arguments depend on existence of facts contrary to those found by the trial court. The court found that Pfabs' reaffir- mance "was not the result of further mis- representations by the Gordons or Leibold as claimed by the Pfabs." Also, the court found agreement was reached regarding waiver of principal payments as alleged by Gordons.

Several established principles fix the scope of our review of these findings by the trial court. We listed them in *Farmers Insurance Group. v. Merryweather,* 214 N.W.2d 184, 186 (Iowa 1974), as follows:

> "Since this is a law action our review is not de novo but only on errors assigned; trial court's findings of fact are equiva- lent to the special verdict of a jury; if supported by substantial evidence they will not be disturbed; we view the evi- dence in its light most favorable to the judgment, whether contradicted or not; the findings of the trial court are to be broadly and liberally construed, rather than narrowly or technically, and in case of ambiguity, they will be construed to uphold, rather than defeat, the judg- ment."

Applying those principles to the record, we hold that the trial court's findings of

fact are supported by substantial evidence and therefore may not be disturbed.

Although Clifford Pfab testified he relied on false reassurances by McIntyre in reissuing the check for the advance payment, the trial court was not required to credit this assertion. Pfab also testified he went to Ralph Gordon immediately after the discussion with McIntyre to seek agreement regarding waiver of principal payments in the event of crop failure. This conduct supports a reasonable inference that Pfab was not persuaded by McIntyre that the information he had obtained in his own investigation was false.

■ The court's finding that the parties made the agreement regarding waiver of principal payments is similarly supported. Although Clifford Pfab denied on direct examination any recollection of agreement having been reached, he admitted on cross-examination that "something like that or close [to it]" had been agreed on. McIntyre testified Pfab later told him the agreement had been made. In this state of the record, it is not essential to determine whether the agreement was ever executed in writing. It is Clifford Pfab's conduct in obtaining the agreement which the trial court found manifested affirmation of the purchase contract, and this finding was not dependent on proof the agreement was reduced to a signed writing.

Because the trial court's finding that Pfabs waived their right to rescind the purchase contract is supported by substantial evidence, we are precluded from interfering with it. We find no merit in Pfabs' first assignment of error.

II. *Failure to find mutual rescission.* Pfabs contend the trial court erred in failing to find the parties mutually rescinded the contract. This contention rests on the undisputed fact that Gordons rented the land after they learned Pfabs would not buy it.

■ We are unable to find evidence which would compel the trial court to find mutual rescission as a matter of law. When a purchaser breaches a land contract, the vendor has three alternative remedies. He may rescind, or he may tender compliance with the contract and bring an action for specific performance, or he may retain the land and bring an action for damages for loss of the bargain. *Prichard v. Mulhall,* 127 Iowa 545, 103 N.W. 774 (1905); 8A Thompson on Real Property § 4476 at 435–436 (1963). Here, the trial court found Gordons elected to keep the land and bring an action against Pfabs for loss of their bargain. Their rental of the land to another was entirely consistent with that course of action.

We find no merit in Pfabs' contrary contention.

■ III. *Enforceability of the contract.* Pfabs allege the trial court should have held the contract unenforceable because of Gordons' failure to follow the forfeiture procedures in Code chapter 656. This allegation is based on a mistaken view that the damages provided for in the contract would be recoverable only through forfeiture of their advance payment.

The contract contained the following provision regarding damages:

If the purchaser fails to fulfill his part of this agreement, he shall pay the Seller a sum equal to any expense incurred by the Seller as liquidated damages. The advance payment named herein shall be forfeited and the same shall be divided equally between the Seller and his agent to apply on his fee, (however not to exceed standard commission percentage).

The first sentence of this provision authorizes an award of liquidated damages based on Gordons' expenses. Such an award does not involve forfeiture. This provision was utilized in the present case. The court found Gordons' damages and, after having done so, ordered the advance payment applied to pay them. This was done under the principle that if the amount of a vendor's damages exceeds the advance payments made by the purchaser, the vendor may have such advance payments applied upon the damages, and this extinguishes the right of the purchaser to recover them.

*Waters v. Pearson,* 163 Iowa 391, 399, 144 N.W. 1026, 1030 (1914).

We find no merit in Pfabs' assertion that no damages are recoverable under the contract except through forfeiture.

■ IV. *The measure of damages.* Pfabs contend that the trial court applied an incorrect measure of damages. They point out that the true measure of damages for breach of a land purchase contract is the difference between the fair market value of the land at the time of the breach and the contract price. See *Prichard v. Mulhall,* supra, 127 Iowa at 550, 103 N.W. at 776.

Here the trial court found $9625.50, the amount of the real estate commission incurred by Gordons, constituted foreseeable damages flowing from the breach as well as the amount contemplated by the liquidated damages clause of the contract.

Pfabs are correct in saying the measure of Gordons' general damages would be the difference between the farm's market value at the date of breach and the contract price. However, this does not help their position. At trial, Gordons contended the property was worth at least the contract price. Pfabs contended they had a right to rescind because the quality of the land was misrepresented to them. Presumably this would make the land worth less than the contract price. They offered evidence tending to show an increase in market value of the land subsequent to the breach of contract, but this evidence did not establish its value at the time of breach. The trial court did not award Gordons any general damages, and Pfabs did not offer any evidence to establish that the market value of the land at the time of breach exceeded the contract price. Pfabs cannot complain of the court's failure to award Gordons more damages, as the court should have done if the contract price exceeded the market value at the time of breach. And they cannot complain of the court's failure to find the market value exceeded the contract price at the time of the breach when no evidence supported such a finding.

Moreover, the record does not support Pfabs' present allegation that they were prevented by the trial court from offering such evidence.

■ Pfabs now also contend the expense reimbursement provision of the liquidated damages clause constitutes a penalty. Assuming, without deciding, that they adequately pleaded this contention in the trial court, they offered no evidence to support it. A party who contends that a liquidation clause is in reality a penalty has the burden to plead that fact and prove the actual damages in the trial court. *Korshoj v. Mills,* 156 F.Supp. 138, 139 (S.D.Iowa 1957); *Heaberlin v. Heaberlin,* 255 Iowa 403, 409, 122 N.W.2d 841, 844 (1963); *Pace v. Zellmer,* 194 Iowa 516, 518, 86 N.W. 420, 421 (1922). Having failed in this burden, Pfabs may not complain now.

■ We hold that the trial court did not err in finding the real estate commission was a compensable expense under the liquidated damages clause in the contract. We do not decide whether this expense would be an item of foreseeable damages which could be recovered in the absence of such a contractual provision. We have not previously faced that issue, and the authorities are divided on it. *Compare Barton v. White Oak Realty, Inc.,* 271 Cal.App.2d 579, 76 Cal.Rptr. 587 (1969), *Smith v. Knight,* 75 Ga.App. 178, 42 S.E.2d 570 (1947), *Trustees of First Presby. Ch. v. Howard Co.—Jewelers,* 19 N.J.Super. 168, 173–174, 88 A.2d 33, 36 (1952), and *Stephenson v. Butts,* 187 Pa. Super. 55, 142 A.2d 319 (1958), all allowing commission recovery in varying circumstances, *with Manning v. Pounds,* 2 Conn. Cir. 344, 199 A.2d 188 (1963), *Downing v. H. G. Smithy Co.,* 125 A.2d 272 (D.C.C.A.1956), *Mutual Employees Trademark v. Silverman,* 202 So.2d 826, 827 (Fla.App.1967), *Linde v. Ellis,* 224 Ky. 649, 6 S.W.2d 1089 (1928), *Cacavas v. Zack,* 43 Mich.App. 222, 203 N.W.2d 913 (1972), *Wilhelm Lubrication Co. v. Brattrud,* 197 Minn. 626, 268 N.W. 634 (1936), and *Ellingsworth v. Shannon,* 161 Or. 106, 88 P.2d 293 (1939), all denying recovery. The weight of authority holds that the broker's commission is not an item of damages recoverable from a defaulting

purchaser. See 5 Corbin on Contracts § 1034 (1964); Annot., 12 A.L.R.2d 1316 (1951); 92 C.J.S. Vendor & Purchaser § 537c(1).

We find no merit in Pfabs' appeal.

## GORDONS' APPEAL

V. *The amount of liquidated damages.* Gordons contend they were entitled to recover Leibold's commission from Pfabs as an expense of sale under the first sentence of the liquidated damages clause and at the same time forfeit the $5,000 advance payment, applying only half that amount on Leibold's commission, under the second sentence of the clause. Thus, they maintain they were entitled to $2,500 in damages over and above the amount of Leibold's commission. The trial court found Gordons' damages in the amount of Leibold's commission and ordered the entire advance payment credited against the award. See *Waters v. Pearson,* supra.

In their original petition, Gordons asked that the advance payment be applied to their damages. Later they filed an amendment adding a second count to the petition, alleging a right to have the advance payment forfeited and divided equally with Leibold. We will assume, without deciding, that Gordons' present contention was adequately raised in this amendment. In their answer to this amendment, Pfabs resisted forfeiture on grounds that Gordons had not complied with the forfeiture provisions of Code chapter 656 and that such forfeiture would constitute a penalty instead of liquidated damages.

The interpretation of the second sentence of the liquidated damages clause urged by Gordons is vulnerable to both defenses. *Wilson v. Piper,* 234 Iowa 456, 12 N.W.2d 826 (1944); *Brown v. Verzani,* 181 Iowa 237, 164 N.W. 601 (1917); *Joeckel v. Johnson,* 178 Iowa 231, 159 N.W. 672 (1916).

The trial court did not err in crediting the entire advance payment against Gordons' damages.

VI. *Leibold's right to a commission.* In resisting Leibold's petition of intervention, Gordons pleaded only a general denial, putting in issue only whether Leibold earned a commission in accordance with the terms of the listing agreement. Now they argue Leibold was entitled to something less than a full commission because of Pfabs' refusal to complete the purchase.

This contention was not made in the trial court and cannot effectively be urged here for the first time. But, in rejecting the contention on that ground, we also point out Gordons acknowledge their contention is contrary to the principle in our cases that a real estate broker earns a commission under a listing agreement like that involved here when he produces a ready, willing and able buyer upon terms stated or agreed upon, even though the buyer subsequently breaches the resulting purchase contract. See *Mullenger v. Clause,* 178 N.W.2d 420, 427 (Iowa 1970).

VII. *Apportionment of costs.* The trial court apportioned court costs 40 percent to Gordons and 60 percent to Pfabs. Gordons complain that they should not have been assessed costs because they prevailed on their claim against Pfabs. This complaint ignores the fact that they did not prevail in their resistance to Leibold's claim against them.

The trial court did not abuse its discretion in charging Gordons with a portion of the costs. See *Ashdown v. Ely,* 140 Iowa 739, 743, 117 N.W. 976, 978 (1909); § 625.3, The Code.

We find no merit in either appeal.

Costs on appeal shall be assessed 40 percent to Gordons and 60 percent to Pfabs.

AFFIRMED.