**RITAM CORPORATION,**
Plaintiff-Appellant,

v.

**APPLIED CONCEPTS, INC.,**
Defendant-Appellee.

No. 85–730.

Court of Appeals of Iowa.

March 31, 1986.

Thomas Makeig of Marcus & Lewi, Fairfield, for plaintiff-appellant.

David L. Davitt of Adams, Howe & Zoss, Des Moines, for defendant-appellee.

Considered by DONIELSON, P.J., and SNELL and SCHLEGAL, JJ.

DONIELSON, Presiding Judge.

Plaintiff appeals from trial court dismissal of its petition in this contract case. The parties agreed there was a breach of contract; therefore, the only issue was damages. Plaintiff contends the trial court erred: (1) in requiring the plaintiff to prove as a part of its case in chief the amount of costs avoided in reduction of plaintiff's lost profits on the contract; (2) in reducing plaintiff's lost profits by a portion of the plaintiff's fixed overhead; and (3) in not awarding plaintiff damages for lost royalties based on the parties' mutual expectations of substantial sales. Defendant contends, pursuant to Iowa Rule of Appellate Procedure 10(b), that because plaintiff has not included a transcript of evidence in the record it cannot argue sufficiency of the evidence.

Plaintiff, Ritam, an Iowa corporation, brought an action to collect damages from Applied Concepts, Inc.'s (ACI), a Texas corporation, for breach of contract. In its answer, ACI admitted there was a breach of contract but denied any damages were sustained by Ritam. The court dismissed the petition on the ground Ritam had failed to prove damages that would not be speculative.

Ritam was in the business of developing computer programs. ACI had developed a computer game machine which operated game programs. The parties entered into a contract on April 5, 1982, whereby Ritam would develop and ACI would distribute a functional version of the game known as "Monopoly" which would be compatible with ACI's computer. Under the terms of the contract, Ritam was to be entitled to nonrefundable advances on royalties in the amount of $6,000 during development of the program. In addition, royalties were to be $1.00 for each of the first 6,000 cartridges sold and $2.00 for each cartridge sold thereafter. ACI was to have an exclusive license for the program unless Ritam's royalties did not exceed $3,000 during any six-month period.

Prior to the execution of the contract, Ritam invested programmers' time worth $300 to $400 on converting the program for use on ACI's game machine.

Eight days after execution of the contract, on April 13, fire destroyed a substantial portion of ACI's inventory of game machines. On May 20, 1982, ACI notified Ritam it was repudiating the contract and

asked Ritam to execute a termination agreement because the project would be unprofitable according to ACI. Evidence showed that after being informed of the repudiation, Ritam immediately reassigned all of its employees to a different program. On June 21, 1982, Ritam indicated it considered ACI in breach and demanded the $6,000 minimum payment.

The court dismissed on the ground Ritam had failed to prove damages which would not be speculative. Ritam moved for an enlargement of findings or a new trial on the ground it had adduced substantial uncontroverted evidence of net profits. ACI resisted and the court overruled the motions.

After the fire, ACI's reputation in the industry was apparently diminished, which led ACI to reevaluate its operations. The monopoly game was then determined to be of marginal utility to ACI, who sought to be released from their contractual obligations with Ritam.

■ We note that ACI raises Rule of Appellate Procedure 10(b), which provides:

> If Appellant intends to urge on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the evidence, he shall include in the record a transcript of all evidence relevant to such finding or conclusion.

ACI asserts Ritam did not include in the record a transcript and should, therefore, be barred. Ritam in its reply brief claims it is not challenging the findings of fact, but only the conclusion of law. Although 10(b) reaches findings and conclusions, we address the merits of such contentions because this rule applies when directed verdicts have been granted and the appellant challenges such a finding or conclusion. *See Powell v. Khodari-Intergreen Co.*, 334 N.W.2d 127, 130 (Iowa 1983). Because we are not faced with a directed verdict and because Iowa authority exists for an appellate court to address the merits even though it is not required to do so when procedure failures are present, we choose to address the merits of the appeal. *See*

*Kellogg v. State*, 288 N.W.2d 561, 563 (Iowa 1980).

■ A review of legal principles regarding damages for breach of a contract will facilitate our disposition of this case. When a contract is breached, the non-breaching party is entitled to recover profits from the breach equal to the net pecuniary gain represented by gross pecuniary gains diminished by cost of obtaining them. *See King Features Syndicate v. Courrier*, 241 Iowa 870, 882, 43 N.W.2d 718, 726 (1950); *see also Juengel Construction Co. v. Mt. Etna, Inc.*, 622 S.W.2d 510, 514 (Mo.Ct.App.1981) (Damages equal contract price less cost of performance). The plaintiff bears the burden of proof to show contract price *and* cost of performance unless the issues of overhead or fixed costs are raised. *Courrier*, 241 Iowa at 882, 43 N.W.2d at 726 ("The *plaintiff* who seeks damages for profits prevented is required to *introduce evidence* that will enable those profits to be evaluated with reasonable certainty. In Restatement, Contracts, Sec. 331, comment b, it is stated: 'Profits are the net pecuniary gain from a transaction, the gross pecuniary gains diminished by the cost of obtaining them.' "). Overhead, which is a component, but not the equivalent, of cost of performance, can be used to reduce the nonbreaching party's recovery if the overhead costs would have *increased* due to performance of the contract. *Courrier*, 241 Iowa at 882, 43 N.W.2d at 726; *Juengal*, 622 S.W.2d at 515. (emphasis added). Should overhead costs remain constant whether or not the contract is performed, which is the usual case, then the nonbreaching party's recovery cannot be reduced by such overhead costs. *Id.* The reason for not reducing the award when overhead costs remain constant is that "if the contract had not been breached, fixed business expenses would have been paid from profits remaining after payment of costs directly relating to performance of the contract." *Juengel*, 622 S.W.2d at 515. In any event, the only burden of proof the breaching party bears is to show overhead costs would have increased had the contract been performed.

Ritam misreads *Junegal* and *Covington Brothers v. Valley Publishing, Inc.*, 93 Nev. 355, 566 P.2d 814, 817–18 (1977), on this point.

■ Applying these principles to the facts of the case, we find that Ritam proved the contract price was at least $6,000 but failed to prove the cost of performance exclusive of overhead costs. Because Ritam did not show what its cost of performance would have been, the trial court properly denied recovery.

■ Ritam's contention regarding a reduction of lost profits by fixed costs is also misplaced. Ritam maintains the only costs incurred in performance of the contract were fixed costs and, therefore, the trial court erred by reducing the $6,000 contract price by such expenses. This is not the case.

The trial court found that fixed costs were not the only cost associated with performance of this contract. This is evidenced by Ritam's decision to shift its resources into production of another game after the contract was breached. Because the trial court found other costs existed in performance of this contract besides fixed costs, which would tend to decrease the damages awarded; we concur with the trial court that absent such evidence the damages shown by Ritam were speculative.

■ As to lost profits on sales according to the royalty schedule, contract law only places a party in the position it would have been in had the contract been performed. *Cf. Metropolitan Transfer, Inc. v. Design Structures, Inc.*, 328 N.W.2d 532, 535–36 (Iowa Ct.App. 1982); *Shinrone, Inc. v. Tasco, Inc.*, 283 N.W.2d 280, 286 (Iowa 1979) (profits determined from what was contemplated at time contract was entered into); *New Hampshire Insurance Co. v. Christy*, 200 N.W.2d 834, 844 (Iowa 1972); *DeWaay v. Muhr*, 160 N.W.2d 454, 460 (Iowa 1968). While the testimony was conflicting, the trial court found sales of the Ritam's monopoly game would not have been substantial and, in fact, sales, if any, would have been difficult to predict. The trial court ruled properly on this issue. Ritam's claim that if the damages are not evaluated *before* the contract is entered, then a breaching party can *always* leave a contract without any recourse for the nonbreaching party, is a misstatement of the law. In this case, even though the parties may have felt substantial sales would occur when the monopoly game was marketed, the unforeseen and intervening event which changed the circumstances was the fire which destroyed ACI's inventory of game machines. Had this event not occurred, then Ritam might have been able to recover damages based on substantial sales. The expectation of the parties before sales of a marketed product begin, while probative, is not controlling on the matter of lost profits. The contract evidences the parties' concern over sales because of the clause allowing cancellation for sales below $3,000. Thus, a breaching party cannot always leave a contract without adverse consequences, but when an unexpected event such as a fire alters a company's business strategy, then the damages awarded for lost profits must always conform to the new realities of the situation. No evidence indicated that *any* net profit would have been made.

AFFIRMED.[1]

---

**1.** We would like to inform appellant's counsel that in all future submissions to this court the appellant's brief shall have a blue cover, the reply brief, if any, shall have a gray cover, and the briefs and appendix shall be printed on both sides of the sheet. *See* Iowa R.App.P. 16(a).