**PARAMOUNT PICTURES CORPORATION,**
Appellee,

v.

**METRO PROGRAM NETWORK, INC.;**
**Gerald Fitzgerald; KOCR–TV,**
Appellants.

No. 91–2012NI.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 9, 1991.

Decided April 16, 1992.

Richard A. Pundt, Cedar Rapids, Iowa, argued for appellants.

Charles E. Miller, Davenport, Iowa, argued (Daniel Willems, on the brief), for appellee.

Before JOHN R. GIBSON, Circuit Judge, KAUFMAN,* Senior District Judge, and MAGILL, Circuit Judge.

MAGILL, Circuit Judge.

Metro Program Network, Inc., and Gerald Fitzgerald, president of Metro, appeal from the district court's[1] order finding them liable for copyright infringement and for the pendant breach of contract state law claim. Appellants claim that the award for breach of contract damages was excessive, and make the somewhat novel argument that the award of both breach of contract and copyright infringement damages constituted an impermissible award of double damages under 17 U.S.C. § 504.[2] We affirm.

## I.

Metro operates commercial television station KOCR–TV in Cedar Rapids, Iowa. Fitzgerald is the president, general manager, secretary, registered agent and sole shareholder of Metro. During January 1988, Fitzgerald signed eight interim license agreements with Paramount to broadcast episodes of "Happy Days," "Mork and Mindy," "Taxi," and packages of motion pictures or movies of the week entitled "Preview II," "Preview III," "Portfolio IX," "Portfolio X," and "Portfolio Special Edition II." Paramount accepted Metro's offers to license these products by letters[3] dated January 28 and March 1. Under the interim agreements, Metro was to pay Paramount 10% of the license fees on January 14, and the remainder in thirty-six equal monthly installments. Each of the agreements contained the following language: "The license arrangement is subject to those additional provisions as are contained in Paramount's Standard Series Contract and Paramount's Standard Terms and Conditions, copies of which are available on request, and will be fully set forth in a formal written contract." The district court found that the Standard Terms and Conditions were properly considered part of the contracts between Paramount and

---

* The Honorable Frank A. Kaufman, Senior United States District Judge for the District of Maryland, sitting by designation.

1. The Honorable David R. Hansen was a United States District Judge for the Northern District of Iowa at the time judgment was entered. He was appointed to the United States Court of Appeals for the Eighth Circuit on November 18, 1991.

2. Appellants also raise a third issue in their brief under the heading "For the purpose of the Statute of Frauds, the applicability of the intent of the parties is essential for the performance of any unsigned contract." Although we try to give every issue raised before this court careful consideration, in this case we admit to serious confusion as to the exact issue appellants are attempting to raise. Insofar as appellants are now claiming the Statute of Frauds as a defense, this issue was not raised below and we need not consider it. See Hall v. Gus Constr. Co., 842 F.2d 1010, 1016 (8th Cir.1988). If appellants are claiming that the district court should have credited Fitzgerald's testimony that he thought the contracts allowed pro rata payment after termination, we find this argument meritless.

3. The interim agreements contained all the material terms for a contract. Paramount treated the interim agreements as offers until they were formally accepted. According to each acceptance letter, "This letter together with your offers to license the above mentioned products shall constitute a firm and binding agreement until such time as a more formal agreement is signed."

Metro even though appellants had not seen or read them and did not know what they contained when appellants signed the contracts. *See Joseph L. Wilmotte & Co. v. Rosenman Bros.*, 258 N.W.2d 317, 323 (Iowa 1977) ("a party is usually bound by the documents he signs even though ... [he] has not expressly accepted all of the contract provisions or is even aware of them").

Fitzgerald tendered a check to Paramount dated January 14 in the amount of $26,000.[4] This check was dishonored on March 19 because Metro's account was closed. No other payment was made by Metro under the contracts. Prior to March 19, Paramount had delivered the episodes of "Happy Days," "Mork and Mindy," and "Taxi" to Metro and Metro began to broadcast them. In addition, Paramount delivered two movies from the "Preview III" package and one movie from the "Portfolio X" package. Metro broadcasted these movies.

On May 6, having not received any payments under any of the contracts, Paramount sent Metro a letter terminating the contracts pursuant to the bankruptcy and default provision of the Standard Terms and Conditions[5] and reserving their rights to collect the sums due under the contracts. On May 20, Paramount sent a second letter, saying that it had been informed that Metro was broadcasting Paramount products "in direct contravention of the Notice of Termination of KOCR's telecast rights dated May 6, 1988" and that the unauthorized broadcast of those products constituted a willful infringement of Paramount's copyrights. Paramount demanded that Metro immediately cease any further broadcasts of Paramount products and re-

turn any and all products Metro might have in its possession.

Subsequently, Metro broadcast "Mork and Mindy" eighteen times, "Happy Days" fifteen times, and "Taxi" fourteen times. Fitzgerald testified that he believed he could fulfill the station's published schedule before he stopped broadcasting Paramount's shows, even though the license agreements had been terminated.

Paramount filed suit, alleging breach of contract and copyright infringement. The case was tried without a jury. The district court found that Metro and Fitzgerald were liable to Paramount for breach of contract in the amount of $217,760, the full contract price. It also found that Metro and Fitzgerald were liable for copyright infringement in the amount of $23,500. On appeal, appellants make two arguments. First, they argue that the breach of contract damages are excessive. Second, they argue that the award of both breach of contract damages and copyright infringement damages is an impermissible award of double damages to Paramount. We affirm the district court.

## II.

The district court had jurisdiction over the copyright infringement claim pursuant to 28 U.S.C. § 1331, and over the state law breach of contract claim pursuant to principles of pendent jurisdiction. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

We review the district court's findings of fact under the clearly erroneous standard, *Brown v. Wallace*, 957 F.2d 564, 566 (8th Cir.1992), and conclusions of law de novo. *Id.; Salve Regina College v.*

---

4. The total license fees under the agreements came to $217,760, so 10% would have been $21,776. The district court found that the $26,000 was intended to cover both the down payment and the monthly installments due February 1.

5. This provision provides in pertinent part:
    If Licensee shall default in the payment of any sums payable in accordance with the terms of this Agreement and such default shall continue for a period of ten (10) days, ... any and all installments or sums payable

under this Agreement remaining unpaid shall immediately become due and payable to Paramount, regardless of the due date thereof, and, in addition ... Paramount shall have the right to (i) terminate each and all of the rights of Licensee under this Agreement ... and/or (ii) suspend the further delivery of prints until such defaults shall have ceased and shall have been remedied, and/or (iii) seize, wherever found, any print of any licensed picture delivered to Licensee hereunder.

*Russell,* —— U.S. ——, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991) (state law).[6]

## A. Breach of Contract Damages

Appellants admit that they breached the contracts with Paramount. They argue, however, that the district court erred in finding that they are liable for the full value of all the contracts. They contend that, because Paramount did not deliver all of the movies under the five movie contracts, they cannot be liable for the full amount.

■■■ Under Iowa law, when a contract is breached, the nonbreaching party is entitled to recover the contract price less the amount it would have cost the nonbreaching party to perform. *Ritam Corp. v. Applied Concepts, Inc.,* 387 N.W.2d 619, 621 (Iowa App.1986). In this case, the cost of performance has not been shown by either party. There are, however, no apparent costs, other than overhead,[7] that Paramount would have incurred if the contract had been performed. The nonbreaching party's overhead costs are counted as a part of the cost of performance only if the overhead costs would have increased due to performance of the contract. *Id.* The breaching party bears the burden of proving the nonbreaching party's overhead costs would have increased had the contract been performed. *Id.* Appellants have not shown that those costs would have increased. Therefore, we cannot say that the district court's finding that the

appellants are liable for the full contract price was clearly erroneous.

■■■ Appellants' argument appears to claim that the acceleration clause, in conjunction with the termination of the contracts, is essentially a liquidated damages clause that, under the circumstances of this case, is really a penalty. Under Iowa law, "[a] party who contends that a liquidation clause is in reality a penalty has the burden to plead that fact and prove the actual damages in the trial court." *Gordon v. Pfab,* 246 N.W.2d 283, 288 (Iowa 1976). While this may have been a viable argument at trial, especially in reference to the contracts where there was no performance by either party, appellants did not present this issue to the trial court. We are not required to address arguments that were not presented below. *Hall v. Gus Constr. Co.,* 842 F.2d 1010, 1016 (8th Cir.1988). Appellants have waived this issue.

## B. Double Damages

■■■ Appellants also claim that the district court erred in granting appellees both breach of contract damages and copyright infringement damages because this constitutes an impermissible award of double damages under 17 U.S.C. § 504 (1988).

Under the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.,* a copyright owner can only recover once for each infringement. 17 U.S.C. § 504.[8] The copyright owner su-

6. We conclude that *Salve Regina College,* 111 S.Ct. 1217, applies to our review of all district court determinations of state law issues, whether they arise in diversity or as pendent claims. This is consistent with both the language and the holding of *Salve Regina College,* which are broad. It is also consistent with the logic used by the Court. The Court stressed that both the function and structure of the appellate courts are designed to allow more thoughtful consideration of questions of law. *Id.* at 1221. Deferential review, the Court points out, invites divergent development of state law among federal trial courts, even within the same state, creating a dual system of enforcement of state-created rights in which the substantive rule applied may depend on the choice of forum. *Id.* at 1222. We see no reason to distinguish between diversity jurisdiction and pendent jurisdiction. Such a distinction would only create a dual system of enforcement where the substantive rule applied

may depend, not on the choice of forum, but on the jurisdictional basis on which the claim is before the court.

7. Expenses that are necessarily incurred, such as utilities, wages and taxes, but that can vary in amount.

8. Section 504 reads, in pertinent part:
   (a) In General.—Except as otherwise provided by this title, an infringer of copyright is liable for either—
   (1) the copyright owner's actual damages and any additional profits of the infringer, as provided by subsection (b); or
   (2) statutory damages, as provided by subsection (c).
   (b) Actual Damages and Profits.—The copyright owner is entitled to recover the actual damages suffered by him or her as a result of

ing an infringer is entitled to *either* actual damages under § 504(b) *or* statutory damages under § 504(c). *Id.* In this case, Paramount opted for statutory damages for the infringement. The district court found that appellants had broadcast forty-seven episodes of the three sitcoms owned by Paramount after May 20. The court awarded them $500 per infringement, totalling $23,500 in statutory copyright infringement damages. Appellants claim that the breach of contract damages are really an award of actual damages under § 504(b) because the claimed infringements occurred during the time the licenses would have been in effect if they had not been terminated and, therefore, appellees are not entitled to both awards.[9] We must therefore look to see if the district court's award of breach of contract damages is, substantively, an award of actual damages for copyright infringement. We find that the breach of contract damages award is not an award of actual damages for copyright infringement under § 504(b).

The breach of contract claim asserted by Paramount relates solely to events that occurred before May 6. The district court recognized this, and relied strictly on con-

tract law and on the events that took place before May 6 in analyzing this claim. Because appellants did not pay Paramount any of the money owed under the license agreements, they were in default, or breach, of the contracts. Under the bankruptcy and default clause in the Standard Terms and Conditions, this occurred within ten days of the first missed payment, due January 14. Thus, at the time Paramount terminated the contracts on May 6, appellants had clearly breached the contracts and Paramount was entitled to damages for that breach. Appellants were liable for these damages even if they had not broadcast any Paramount products after the contracts were terminated.[10]

In contrast, the copyright infringement claim relates to events that occurred after May 6. Once Paramount exercised its contractual right to terminate the licenses on May 6, appellants no longer had any right to broadcast Paramount products. The district court recognized this temporal distinction between Paramount's two claims by relying on facts and events occurring after May 20 [11] to make its determination on the copyright infringement claim.

the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages....
(c) Statutory Damages.—
(1) [T]he copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work ... in a sum of not less than $250 or more than $10,000 as the court considers just.
17 U.S.C. § 504 (prior to 1988 amendments).

9. Appellants rely on *Deltak, Inc. v. Advanced Sys., Inc.,* 767 F.2d 357 (7th Cir.1985), to support their argument that this is a double recovery because the breach of contract damages awarded are equivalent to lost sales, and the statutory copyright infringement damages awarded are equivalent to the value of use to appellants. Our canvass of the law on double damages discloses that *Deltak* is the only possible authority upon which appellants can rely for this proposition. *Deltak,* however, is clearly distinguishable. In *Deltak,* the Seventh Circuit decided that the value of the infringer's use of the copyrighted product could be used to determine the

actual damages under § 504(b). *Id.* at 360–61. The court went on to say that a copyright owner could not recover both its lost sales to the infringer and the value of use to the infringer of the infringement under § 504(b) because that would double count the same transaction. *Id.* at 363. We think appellants' argument is misplaced. Appellants must first show that the underlying factual transaction is the same for both awards. Because we find that each of Paramount's claims has a different underlying factual transaction, we need not address appellants' rather stretched analogy.

10. Until May 6, Metro had been broadcasting Paramount's products under the auspices of the interim license agreements. Until the agreements were terminated, Metro could broadcast the Paramount products without infringing its copyright. Thus, appellants could not be liable for copyright infringement before May 6.

11. The licenses were terminated by letter on May 6. Paramount, however, gave appellants, who claimed they never saw this letter, the benefit of the doubt and only claimed infringement damages from the date of the second notice of termination on May 20.

Because the damage awards for breach of contract and copyright infringement were for completely separate injuries, the district court correctly awarded both breach of contract damages and copyright infringement damages to appellees. *See Joseph J. Legat Architects, P.C. v. United States Dev. Corp.*, No. 84–C–8803, 1991 WL 38714, 1991 U.S. Dist. LEXIS 3358 (N.D. Ill. Mar. 20, 1991) (damages for copyright infringement not synonymous with damages for breach of contract; claims seek to redress two distinctly different injuries where breach of contract claim seeks to enforce rights under contract to receive monies due for preparation and use of plans while copyright claim seeks to recover for use of plans in way that exceeded rights under the contract); *see also Edwin K. Williams & Co. v. Edwin K. Williams, Etc.*, 542 F.2d 1053, 1055 (9th Cir.1976) (tacitly approving district court award of separate damages for breach of contract and copyright infringement where awards based on different transactional facts).[12]

### III.

We hold that the district court did not err in awarding the full price of each contract as damages for appellants' breach of contract in this case. We also hold that the district court did not erroneously award double damages to appellees. We affirm.

---

**12.** We have canvassed the law and have found only these two cases that address this specific issue. Also, we have not found anything on point in any of the copyright treatises.