# IN THE COURT OF APPEALS OF IOWA

No. 22-1704
Filed August 9, 2023

**MICHAEL BAGBY,**
        Plaintiff-Appellant,

**vs.**

**FIRST STREET DELI II, LLC, KIM HARKER, and ALEXIS BROWN,**
        Defendants-Appellees.
_____

        Appeal from the Iowa District Court for Buchanan County, Richard D. Stochl, Judge.

        A creditor appeals the dismissal of his petition for breach of contract and unjust enrichment. **REVERSED AND REMANDED.**

        Benjamin M. Lange and Austin McMahon of Swisher & Cohrt, PLC, Waterloo, for appellant.

        Jeremy B. Hahn of Roberts & Eddy, P.C., Independence, for appellees.

        Considered by Schumacher, P.J., and Chicchelly and Buller, JJ.

**CHICCHELLY, Judge.**

Michael Bagby appeals the district court ruling dismissing his claims for breach of contract and unjust enrichment. Bagby's debtors—First Street Deli II, LLC (the LLC) and Kim Harker and Alexis Brown, individually and as members of the LLC—argued that their contract with Bagby was unconscionable. Bagby asserts the district court erred in finding that the contract was unconscionable and its late-fee provision was an unenforceable penalty. Finding errors of law in both the unconscionability and penalty analyses, we reverse and remand to the district court for entry of an order consistent with this opinion.

## I. *Background Facts and Proceedings.*

The parties entered into the contract in question on August 31, 2020. The language of the contract is straightforward: Bagby was to loan $15,000 to the LLC, Harker, and Brown (collectively, the debtors). The debtors were to repay Bagby $15,000 in six months, with a specific schedule outlined for twenty payments of $750 that would be due roughly every one to two weeks. There would be a late fee of $25 per day applied to any past-due payments.

In reality, Bagby only loaned the debtors $10,000, and they made fifteen of the twenty payments for a total of $11,250 in return. Many of the payments were submitted late. Bagby never supplied the debtors with an invoice or other notice of the amount due until this lawsuit was filed in July 2021. He provided an accounting of the loan in which he applies late fees from the eighth payment onward, even though five of the first seven payments were received late. In this accounting, Bagby applies new payments to the late fees first rather than to the principal amount owed. The contract was silent as to how future payments should

be applied in relation to late fees. Importantly, Bagby's accounting reflects that the debtors owed a principal amount of $15,000 despite him only loaning them $10,000. Harker testified that this discrepancy in the principal was purposeful, as they had orally agreed to this arrangement in order for Bagby to avoid claiming interest for tax purposes. Bagby estimated a total amount remaining due of $50,775 and requested the court enter a judgment whereby additional late fees would be added from the date he filed suit up until judgment.

For context, Bagby and Harker have known each other for more than twenty years. They engaged in a romantic relationship, which Bagby described as "casino buddies," from approximately April 2018 until June 2020. Harker explained the relationship continued in an on-again, off-again fashion until May 2021. Although Bagby disputed this timeline, he acknowledged they were romantically involved again after June 2020. Prior to the contract in question, Bagby loaned Harker varying amounts of money in a personal capacity. We do not have substantial information about these dealings.

At some point, Harker asked Bagby to purchase a deli shop that she was planning to buy with her daughter (co-debtor Brown) and lease it to them. Bagby declined. On August 29, Harker was at Bagby's home explaining that she needed $10,000 in order to move forward with the purchase of the deli shop in a couple of days. Bagby acknowledges that Harker was in a bad state and that she told him that she was going to commit suicide on his front lawn. The parties dispute whether Harker requested a loan from Bagby or he offered her the money. In any event, they agreed to proceed with a loan. Initially, Harker offered a $10,000 loan in exchange for $20,000 paid back in two months. These were the same terms

she proposed to three other people who declined her offer. Harker and Bagby ultimately lowered the repayment plan to $15,000 over a six-month period. Harker typed up the contract and included the aforementioned late-fee provision. It is not clear who proposed this clause. Harker and her daughter, Brown, signed the contract in their individual capacities and on behalf of the LLC.

The court held a bench trial on this matter in September 2022. The court found the contract was unconscionable and its late fee provision was against public policy, and it declined to enforce any of the contract terms. The court ruled that the debtors repaid all the money Bagby loaned to them and owed nothing more. Accordingly, the court dismissed Bagby's petition and ordered him to pay the costs of the action. Bagby filed a timely appeal.

## II. Review.

"In a law action tried to the court, our review is for the correction of errors at law, and the district court's findings of fact are binding on us if they are supported by substantial evidence." *Poller v. Okoboji Classic Cars, LLC*, 960 N.W.2d 496, 509 (Iowa 2021) (citation omitted). "Evidence is substantial for purposes of sustaining a finding of fact when a reasonable mind would accept it as adequate to reach a conclusion." *Falczynski v. Amoco Oil Co.*, 533 N.W.2d 226, 230 (Iowa 1995).

## III. Discussion.

Bagby argues the district court erred in finding the contract was unconscionable. "Whether an agreement is unconscionable must be determined at the time it was made." *Bartlett Grain Co., LP v. Sheeder*, 829 N.W.2d 18, 27 (Iowa 2013). "A contract is unconscionable where no person in his or her right

senses would make it on the one hand, and no honest and fair person would accept it on the other hand." *Id.* (citation omitted). "Neither [the] court nor the legislature has attempted to precisely define the term 'unconscionable' in the context of commercial contracts." *In re Marriage of Shanks*, 758 N.W.2d 506, 514 (Iowa 2008). However, "[t]here are two generally recognized components of unconscionability: procedural and substantive." *Bartlett Grain*, 829 N.W.2d at 27. "The former includes the existence of factors such as 'sharp practices[,] the use of fine print and convoluted language, as well as a lack of understanding and an inequality of bargaining power.' The latter includes 'harsh, oppressive, and one-sided terms.'" *Id.* (alteration in original) (internal citations omitted).

With regard to the contract in question, we find its bargain is neither procedurally or substantively unconscionable. Bagby attempted no procedural antics like fine print or convoluted language. The debtors do not allege that Bagby attempted to deceive or compel them to sign the contract. In fact, Harker and Brown acknowledge that they each understood the terms of the agreement and signed it voluntarily. We are given pause by Bagby's knowledge of Harker's individually weaker bargaining position due to her suicidal state. *See Shanks*, 758 N.W.2d at 515 (listing factors contributing to a finding of unconscionability to include: "knowledge of the stronger party that the weaker party is unable reasonably to protect his interests by reason of physical or mental infirmities" (citation omitted)). However, Harker does not argue that her mental state prevented her from understanding the bargain she struck, negotiating its terms, or pursuing other financing or even employment options. Ultimately, the totality of the circumstances do not give rise to a finding of procedural unconsionability. *See*

*Peffer v. Ulmer*, No. 02–0752, 2003 WL 21229554, at *1 (Iowa Ct. App. May 29, 2003) (finding a contract was not unconscionable despite a party's slowed mental functioning, in part because he "was fully aware of the critical lease provisions" and knew he was giving the other party a very favorable deal that he himself proposed).

Even though the late fees turned out to be a bad deal for Harker, the bargain itself was not substantively so unjust as to require invalidation of the overall contract.  Harker herself proposed the terms and proceeded to negotiate a more favorable deal.  Moreover, the written contract outlines an even exchange of $15,000 between the parties.[1]  An equal bargain surely cannot be said to be unconscionable.  Even the parties' oral agreement of $15,000 in exchange for $10,000 is not outright unconscionable.  The record reflects that the debtors needed cash immediately and were unable to secure more traditional financing, but it does not expound upon the reasons.  We must remember:

> It is not sufficient that a party made an imprudent bargain:
>> People should be entitled to contract on their own terms without the indulgence of paternalism by courts in the alleviation of one side or another from the effects of a bad bargain.  Also, they should be permitted to enter into contracts that actually may be unreasonable or which may lead to hardship on one side.  It is only where it turns out that one side or the other is to be penalized by the enforcement of the terms of a contract so unconscionable that no decent, fair-minded person would view the ensuing result

---

[1] As the district court did not address the consequences of the discrepancy between the written and oral agreements, and the parties do not dispute the amount in controversy on appeal, we decline to further question this term of the contract.  After all, our appellate rules require us to confine our review to issues raised and ruled on below that do not require us to assume a partisan role in research and advocacy.  *See Inghram v. Dairyland Mut. Ins. Co.*, 215 N.W.2d 239, 239 (Iowa 1974).

> without being possessed of a profound sense of injustice, that equity will deny the use of its good offices in the enforcement of such unconscionability.

*Shanks*, 758 N.W.2d at 515 (citation omitted). We find the bargain was not unconscionable, so we reverse and remand for entry of an order consistent with this opinion.

As for the late-fee provision, we find the district court erred in ruling it a penalty because the debtors did not meet their burden of proof. *See Gordon v. Pfab*, 246 N.W.2d 283, 288 (Iowa 1976) ("A party who contends that a liquidation clause is in reality a penalty has the burden to plead that fact and prove the actual damages in the trial court."). The debtors denied that the late-fee provision was a liquidation clause, never claimed that it was a penalty, and offered no evidence of damages, or lack thereof. Accordingly, we reverse the court's ruling in regard to the late-fee provision as well and find the court should determine the consequences of this clause in light of the overall disposition.

**REVERSED AND REMANDED.**